* Reporter' Note: In its opinion on certiorari review, the Supreme Court dropped the defendant's name and restyled the Court of Criminal Appeals' opinion "Anonymous v. State." The Court of Criminal Appeals declined to do likewise.
The defendant was charged with three counts of first degree rape of one of his daughters, in violation of § 13A-6-61, Code of 1975, and also with three counts of incest with the same daughter, in violation of § 13A-13-3, Code of 1975. These charges were predicated upon three acts of forcibly compelled sexual intercourse, which allegedly occurred on three separate dates in April 1983. The prosecutrix was an adult at the time these acts allegedly occurred.
At trial, the prosecutrix was allowed to testify, over the defendant's objection, that *Page 973 
her father had been forcing her, on frequent occasions, to engage in sexual intercourse with him since some point in her early childhood. She also testified that her father had forced her to have two abortions.
The prosecutrix's sister was allowed to testify that she had also been forced to have intercourse with her father, on frequent occasions, since some time in her early childhood. She testified that she had also become pregnant by the petitioner's agency; however, unlike the prosecutrix, she had given birth as the result of this pregnancy. At the time of trial, the child was ten years of age.
The defendant was convicted on all counts, and he was sentenced to serve 90 years in prison.
On appeal, the Court of Criminal Appeals, relying on this Court's decision in Lee v. State, 246 Ala. 69, 18 So.2d 706
(1944), among other cases, reversed the defendant's conviction and remanded for a new trial. The Court of Criminal Appeals specifically held:
 "As specifically noted in Lee v. State, 246 Ala. 69, 18 So.2d 706 (1944), the prosecution was allowed to prove the fact of the prosecutrix's pregnancy and the procuring of two abortions. As stated in Lee, supra, this pregnancy '. . . through the agency of her father does tend to shed light on the main inquiry, but unlike the fact of sexual intercourse with the father, it also tends to unduly multiply the issues and diverts the minds of the jury from the main issue.' The fact that the prosecutrix's father procured her abortion is lacking in the requisite relevancy to render it admissible.
 "Similarly, the fact that the sister was permitted to testify over objection that she became pregnant and had a child by her father was also reversible error. Lee, supra; Brasher v. State, 249 Ala. 96, 30 So.2d 31 (1947); and Cofer v. State, 440 So.2d 1121 (Ala. 1983). See also Banks v. State, 358 So.2d 477 (Ala.Crim.App. 1978), cert. denied, 358 So.2d 480 (Ala. 1978).
 "This evidence as to the pregnancies of the two sisters was simply evidence of prior bad acts of a criminal defendant which is presumptively prejudicial. Cofer, supra. It interjects a collateral issue into the case which would divert the minds of the jury from the main issue. The admission of such evidence was clearly erroneous under the authorities herein cited."
Grizzell v. State, 507 So.2d 969, 971 (Ala.Crim.App. 1986).
Upon the State's petition, we granted certiorari to determine whether the judgment of the Court of Criminal Appeals was correct. The State, of course, argues that the trial court's decision was correct and that the judgment of the Court of Criminal Appeals must be reversed. The State argues that the facts of Lee, supra, are distinguishable from those in the present case. We acknowledge that the facts of the present case are not identical to those in Lee. However, we fail to see how this determination, without more, requires reversal.
In order to reverse the judgment of the Court of Criminal Appeals, a determination must necessarily be made that the evidence which that court held to be inadmissible was, indeed, admissible. To make that determination, the applicable laws of evidence must be applied to the unique facts of this case.
The general evidentiary principle, long adhered to in Alabama, which must be applied in this case may be stated as follows: In a prosecution for one offense, evidence of collateral[1] crimes or acts is generally inadmissible to prove the guilt of the accused. See Ex parte Cofer, 440 So.2d 1121
(Ala. 1983); Ex parte Killough, 438 So.2d 333 (Ala. 1983);Brasher v. State, 249 Ala. 96, 30 So.2d 31 (1947); Haley v.State, 63 Ala. 89 (1879); Ingram v. State, 39 Ala. 247 *Page 974 
(1864). In fact, it has been stated that such evidence is prima facie inadmissible. See Cofer, supra; Brasher, supra;Allen v. State, 380 So.2d 313 (Ala.Crim.App. 1979), cert.denied, 380 So.2d 341 (Ala. 1980).
As was explained in Cofer:
 " 'This is a general exclusionary rule which prevents the introduction of [collateral] criminal acts for the sole purpose of suggesting that the accused is more likely to be guilty of the crime in question. This rule is generally applicable whether the other crime was committed before or after the one for which the defendant is presently being tried.
 " 'This exclusionary rule is simply an application of the character rule which forbids the state to prove the accused's bad character by particular deeds. The basis for the rule lies in the belief that the prejudicial effect of [collateral] crimes will far outweigh any probative value that might be gained from them. Most agree that such evidence of [collateral] crimes has almost an irreversible impact upon the minds of the jurors.' "
Cofer, 440 So.2d at 1123 (quoting C. Gamble, McElroy's AlabamaEvidence § 69.01(1) (3d ed. 1977) (hereinafter cited as "McElroy's ").
The rationale for this general exclusionary rule was well stated by one commentator:
 "This exclusionary rule has long been the law in Alabama and every other American jurisdiction and is '[a] concomitant of the presumption of innocence,' which requires that 'a defendant . . . be tried for what he did, not for who he is.'
 "Evidence that tends to show guilt of another offense is not excluded because it is irrelevant. Indeed, because 'a man of bad character is more likely to commit a crime than one not [of bad character],' evidence of collateral crimes or acts is frequently highly relevant. Nonetheless, such evidence is excluded because of its potentially prejudicial impact. Evidence of collateral crimes or acts may 'direct the jury's attention away from the offenses charged to a crime not charged,' it may be so heinous in nature as to 'incite the jury to irrational decision by its force on human emotion,' or it may lead the jury to conclude that because the defendant ' "committed some other similar crime, he must also have committed the crime for which he is on trial." ' "
(Footnotes omitted.) Schroeder, Evidentiary Use in CriminalCases of Collateral Crimes and Acts: A Comparison of theFederal Rules and Alabama Law, 35 Ala. L.Rev. 241 (1984).
This rationale notwithstanding, there exist certain exceptions to this general exclusionary rule. Although evidence of collateral crimes and acts may not be admitted to prove the accused's bad character, it has been held admissible to prove such things as the accused's criminal intent, his motive, or his identity, or to prove that the now-charged crime and another crime were committed pursuant to a single plan, design, scheme, or system. See generally, McElroy's § 69.01, and those cases cited therein. Of course, the evidence offered must be relevant to some issue that is material to the case. See Cofer,supra (evidence offered was inadmissible because it was offered to prove intent and there existed "no real and open issue" concerning the accused's intent); Killough, supra (evidence offered under the exceptions to this general exclusionary rule must be both relevant and material).
Application of this rule and its exceptions to the facts of the present case makes it clear that the Court of Criminal Appeals correctly determined that the evidence of the prosecutrix's pregnancy and her abortions and the sister's pregnancy and resulting child was inadmissible. There is simply no imaginable reason for the admission of this testimony other than to prove the defendant's bad character. This is, of course, not an acceptable purpose. See Brasher v. State,249 Ala. 96, 30 So.2d 31 (1947).
The State argues that this evidence should have been held admissible because evidence of other collateral acts of sexual misconduct was held admissible by the Court of Criminal Appeals. Apparently, the argument is that this evidence of collateral acts should have been held admissible under the same exceptions which allowed *Page 975 
the admission of evidence of those other collateral acts. The fallacy of this argument is that it assumes that the Court of Criminal Appeals was correct when it held that evidence of those other collateral acts was admissible. In truth, the court was not correct.
The Court of Criminal Appeals held the evidence of those other acts admissible under the "identity" and "intent" exceptions to the general exclusionary rule. However, neither exception is applicable.
The identity of the person who actually committed the acts with which the defendant was charged was not at issue. The defendant did not argue that "someone else committed the acts with which he was charged"; instead, he merely denied that the acts ever occurred. Therefore, because there was no "real and open" issue concerning identity, the collateral acts could not be admissible as going toward such an issue. See Cofer, supra,Killough, supra.
Neither can the "intent" exception be applied in this case. Under §§ 13A-6-60 and -61, Code of 1975, rape in the first degree does not require any specific criminal intent. Similarly, no specific criminal intent, other than knowledge of relationship, is required under § 13A-13-3, Code of 1975, defining the crime of incest. The intent exception is simply not applicable in a case that requires no specific criminal intent as a prerequisite to conviction. See McElroy's § 69.01(5) and cases cited therein. As was explained by Justice Shores in Cofer, supra, any intent necessary to this type of crime could be inferred by the jury from the testimony aboutthe act charged:
 "This intent may be inferred by the jury from the act itself. Parker v. State, 406 So.2d [1036] 1039 [Ala.Cr.App. 1981]. The prosecutrix testified that Cofer kissed her, removed some of her clothing, inserted his finger into her, and lay close to her. If the jury believed her testimony, it could infer that Cofer had the requisite intent and find him guilty of the offense. There is, therefore, no real and open issue about his intent, and the evidence of the prior rape was erroneously allowed to prove Cofer's intent."
(Emphasis added.) 440 So.2d at 1124.
Because the asserted exceptions of "intent" and "identity" are not applicable to this case, one cannot escape the conclusion that there exists no exception upon which the admissibility of the testimony concerning the prior sexual mistreatment of the defendant's daughters could be based. Similarly, that evidence (concerning the pregnancies, the abortions, and the child) which was held inadmissible by the Court of Criminal Appeals was, indeed, inadmissible.[2]
The foregoing considered, the judgment of the Court of Criminal Appeals is affirmed.
AFFIRMED.
JONES, ALMON, SHORES and HOUSTON, JJ., concur.
TORBERT, C.J., and MADDOX and STEAGALL, JJ., concur specially.
ADAMS, J., not sitting.
[1] Many Alabama cases use the term "collateral" to describe crimes or acts other than those for which the defendant is on trial. Because such crimes or acts may occur before, after, or at the same time as the crime for which a person is on trial, the term "collateral" makes more sense than "prior" or "similar."
[2] The defendant did not petition for certiorari to this Court. Therefore, the evidence of collateral acts held admissible by the Court of Criminal Appeals was discussed only for the purpose of addressing the State's arguments.