TAYLOR, Presiding Judge.
The appellant, Randy Dean Rock, was charged with rape, sodomy, and sexual abuse. He was convicted of sodomy in the second degree and sexual abuse in the second degree, violations of §§ 13A-6-64 and 13A-6-67, Code of Alabama 1975. He was sentenced to imprisonment for eight years and four months on the sodomy conviction and one year on the sexual abuse conviction.
The state’s evidence tended to show that the victim, appellant’s sister-in-law, had been molested by the appellant since she was eight years old. The victim has two older sisters, the eldest of whom was married to the appellant. At the time of the trial, the victim was 17 years old. She testified as to numerous instances in which the appellant rubbed her breasts and behind. She also stated that many times he would “put his finger in” her vagina. She further testified that the appellant on more than one occasion performed oral sex upon her and asked her to rub his penis. At the time of the first instance, the appellant told her that if she told anyone, someone would get hurt.
The victim testified that, on one occasion, just prior to her 12th birthday, she went over to the appellant’s house to feed the dogs, since his foot was in a cast. Once she entered the house, the appellant called her upstairs. When she went upstairs to where the appellant was, she saw the appellant on the bed nude. The victim testified that at this time the appellant put his penis in her vagina.
The victim further stated that in 1985, she and the appellant were swimming in the victim’s pool. The appellant called her over to the diving board. He told her they were going to do what is called “sixty-nine,” which he proceeded to do.
The victim first told one of her sisters (not the sister married to the appellant) about the instances. Then both girls went to talk with their mother.
The appellant’s wife testified that the appellant admitted that he had done those things to her youngest sister, the victim. Subsequently, appellant’s wife filed for divorce.
On appeal, the appellant raises four issues.
I
Initially, appellant contends that the trial court erred in allowing testimony of collateral offenses involving the victim’s sister who was not married to appellant.
The record reflects that the appellant denied that he had told his wife that he had had intercourse or oral sex with the victim. On cross-examination, the appellant denied having had sexual relations with the victim. He further stated that he had touched the victim’s breasts, but that the touching was accidental, not intentional, and that it happened when they were “horsing around” in the pool. The prosecutor then asked the appellant if he had touched the middle sister’s breasts and vagina. He stated that *969 he had, but that that touching was also accidental, not intentional, and had also happened in the pool.
Appellant contends that the trial court erred in allowing the questions concerning prior instances involving the “middle” sister. Specifically, he claims that this was evidence of collateral acts and was offered only to show bad character.
“On the trial of a person for the alleged commission of a particular crime, evidence of his doing another act, which itself is a crime, is not admissible if the only probative function of such evidence is to show his bad character....”
C. Gamble, McElroy’s Alabama Evidence, § 69.01(1) (3d ed. 1977). Evidence of another offense is admissible if it is relevant for any purpose other than showing guilt through the medium of bad character. See Whiddon v. State, 53 Ala.App. 280, 299 So.2d 326 (1973). See also, Schroeder, Evidentiary Use in Criminal Cases of Collateral Crimes and Acts: A Comparison of the Federal Rules and Alabama Law, 35 Ala.L.Rev. 241 (1984). The established exceptions to the general exclusionary rule concerning collateral acts include use of collateral acts to show intent, motive, and identity. See, McElroy’s, supra.
In Lee v. State, 246 Ala. 69, 18 So.2d 706 (1944), the appellant was charged with the carnal knowledge of his daughter. The state introduced evidence from three of her sisters that on many occasions the appellant had had sexual intercourse with them. The court stated that such evidence was admissible; however, the questions did not stop there. One sister was permitted to testify that she had become pregnant by her father and that he had ultimately taken her to have an abortion. The Alabama Supreme Court stated:
“The fact of Ruby’s pregnancy, through the agency of her father, does tend to shed light on the main inquiry, but unlike the fact of sexual intercourse with her father, it also tends to unduly multiply the issues and to divert the minds of the jury from the main issue.”
Lee, 246 Ala. at 72, 18 So.2d 706.
More recently, our Supreme Court in Anonymous v. State, 507 So.2d 972 (Ala.1987), faced an issue similar to that in the case at bar. In Anonymous, the appellant was charged with rape, a general intent offense. The court acknowledged that evidence of collateral acts may be received into evidence under the “intent” or “identity” exception; however, it found that neither exception applied in that instance.
The decision in Anonymous was further refined by our Supreme Court in Bowden v. State, 538 So.2d 1226 (Ala.1988), dealing with the “motive” exception to the general exclusionary rule. The court stated that “testimony offered for the purpose of showing motive is always admissible.” However, “where the defendant is not charged with the offense of incest, ... it becomes questionable whether evidence establishing that the accused raped and/or sexually abused one or more of his other children is admissible to prove his motive in raping the victim, also his child.” Bowden, at 1235.
In Bowden, our Supreme Court did not hold that evidence of a collateral act of incest could never be admissible where the offense charged is not incest. It did point to some limitations. It cited Brasher v. State, 249 Ala. 96, 30 So.2d 31 (1947), for the proposition that the collateral acts, to be admissible, should share some similarities.
In the instant case, the two girls involved were the younger sisters-in-law of the appellant. They were both minors. There was only two years’ difference in their ages. Finally, the allegations involving the two girls were almost identical in nature.
Evidence of collateral acts is not always inadmissible. In cases involving sex crimes, such evidence is admissible, but only if it falls under one of the recognized exceptions to the exclusionary rule. See Staten v. State, 547 So.2d 607 (Ala.1989).
In this case, we hold that the collateral acts were admissible under the “intent” exception. The appellant denied doing anything to the victim except accidentally touching her in the swimming pool. Further, the court instructed the jury to con *970 sider the evidence of collateral acts only in relation to the sodomy and sexual abuse charges, not in regard to the rape charge. The trial court relied on the “intent” exception. Thus, the court committed no error in receiving this evidence.
II
Appellant’s next contention is that the trial court erred in denying his motion for new trial on the sexual abuse charge. Specifically, appellant argues that the statute of limitations had run on the offense. The prosecution for sexual abuse in the first degree commenced in January of 1987. Appellant was indicted by the grand jury in May of 1987. The victim was born in 1970 and at the time of the instance she was under the age of sixteen. It is the charged offense that we look at to determine if the statute of limitations had run, not the lesser included offense that appellant was convicted of. Sexual abuse in the first degree is a Class C felony. See, § 13A-6-66(b), Code of Alabama 1975. The charged offense took place in the fall of 1985. At that time, the statute of limitations for the prosecution of most felonies was three years. At this time the statute of limitations had not run on the charged offense. However appellant argues that the statute of limitations had run since he was convicted of the lesser included offense of sexual abuse in the third degree which is a misdemeanor. On January 7, 1985, § 15-3-5, Code of Alabama 1975, was amended to read as follows:
“(a) There is no limitation of time within which a prosecution must be commenced for:
“(1) Any capital offense;
“(2) Any felony involving the use, attempted use, or threat of, violence to a person;
“(3) Any felony involving serious physical injury or death of a person;
“(4) Any sex offense involving a victim under 16 years of age, regardless of whether it involves force or serious physical injury or death;
“(5) Any felony involving arson of any type;
“(6) Any felony involving forgery of any type;
“(7) Any felony involving counterfeiting; and
“(8) Any felony involving drug trafficking.
“(b) The amendments made to this act shall apply:
“(1) To all crimes committed after January 7, 1985; and
“(2) To all crimes committed before January 7, 1985, for which no statute of limitations provided under pre-existing law has run as of January 7, 1985.”
As this court stated in Hawkins v. State, 549 So.2d 552 (Ala.Cr.App.1989):
“Under § 15-3-5(a)(4), added by the January 1985 amendment, there is no limitation of time within which a prosecution must be commenced for any sex offense involving a victim under the age of 16. Furthermore, § 15 — 3—5(b)(2), Code of Alabama 1975, provides in effect that the ‘no limitation’ provision of § 15-3-5 applies to all such crimes committed before January 7, 1985, for which any statute of limitations provided Under pre-ex-isting law had not run as of January 7, 1985.”
Hawkins, at 554.
The statute of limitations had not run on this offense. Thus, the trial court committed no error in denying appellant’s motion for new trial.
Ill
The appellant further argues that he was denied a fair trial by the trial court’s limiting cross-examination of the victim and of the appellant’s ex-wife. This court stated in Tombrello v. State, 421 So.2d 1319 (Ala.Cr.App.1982), quoting Ball v. State, 337 So.2d 31 (Ala.Cr.App.), cert. quashed, 337 So.2d 39 (Ala.1976):
“The latitude and extent of cross-examination has been held to be subject to some limitation. Both state and federal decisions vest trial judges with the limited discretion to cut off questions on cross-examination which: (1) are repetitious, (2) concern wholly collateral mat *971 ters, (3) are irrelevant, or, (4) are harassing, annoying or humiliating.”
Tombrello, at 1322.
In the instant case, the record reflects that when defense counsel cross-examined the victim, he questioned her extensively about the indictment and a copy of the indictment which her mother was purported to have. Counsel asked the victim several questions about when she saw the indictment and where she saw it. The prosecutor objected to this continued line of questioning. Defense counsel, however, was allowed to question the victim further outside the presence of the jury. The witness’s answers established that she knew nothing more about the indictment than she had already stated. Thus, any further questions on the subject would have been repetitious and irrelevant. Accordingly, the trial court did not err in not allowing any further questions on the subject.
Appellant further cites cross-examination of the appellant’s ex-wife, who was also the sister of the victim. Defense counsel questioned that witness about the copies of the indictments against appellant in her mother’s possession. The following occurred:
“A. Sir, I don’t remember when I saw them.
“Q. Where were you when you saw them?
“A. I don’t remember.
“Q. Whose possession were they in when you saw them?
“A. My mother’s.
“Q. It was at your mother’s house, wasn’t it?
“A. It was in the yard.
“Q. Who else was present?
“A. I don’t remember.
“Q. You said you didn’t mail any of them out. Did your mother mail any of them out?
“A. No, sir.
“Q. How about [your sister]?
“A. No.
“Q. Did you mail any of these other things that have been mailed out in the community up there?
“MR. BROWN: We object.
“THE COURT: Sustained.
“Q. What about all these hate letters that were mailed out; did you mail those out?
“MR. BROWN: We object.
“THE COURT: Sustained.
“Q. What about his brother’s divorce. Did you mail it out?
“MR. BROWN: Objection.
“THE COURT: Sustained.
“Q. How about all these postcards that were mailed out; did you mail those out?
“MR. BROWN: Objection.
“THE COURT: Sustained. Let’s don’t have any more about the mailings.”
From the record, it appears that the questions were repetitious. The jury observed the witnesses during the trial and also had ample evidence before it from the testimony of both the victim and the ex-wife of any possible bias. The trial court did not abuse its discretion in this instance.
IV
Last, appellant contends that he was denied a fair trial because of prosecu-torial misconduct. The following occurred during the cross-examination of the appellant:
“Q: Mr. Rock, Mr. Nail asked you when you first learned about the charges being filed against you, and I believe your answer was Sheriff Allen called down to my office, is that right?
“A: Yes, sir.
“Q: That’s when you learned about what the charges were, when she called down to your office, right?
“A: That’s when I knew that they had been to any kind of authorities.
“Q: And, of course, you told Sheriff Allen that this was all a big lie, didn’t you?”
After this occurred, defense counsel moved for a mistrial, arguing that the prosecutor’s last question constituted a comment on appellant’s failure to give a statement and that that comment violated his *972 Fifth Amendment rights. The trial court denied the motion and gave the jury the following instruction:
“Ladies and gentlemen, before you left, I believe the last question from the prosecutor was words to this effect, ‘And, of course, you told Sheriff Allen this is all a big lie.’ I will ask you not to infer anything from that question and not let it become part of your consideration in deliberating this case. This defendant, as all defendants in this county, has a right not to make any statement. Just disregard that remark.”
As Judge Bowen stated in Wright v. State, 434 So.2d 287, 289 (Ala.Cr.App.1983), “[e]ven improper comments in these areas are not necessarily ineradicable.” This court has said:
“A trial judge is in the best position to determine whether the prejudicial effects of an improper question can be eradicated by instructions to the jury. His determination of this matter should be accorded great deference. Retowsky v. State, 333 So.2d 193 (Ala.Cr.App.1976); Pickett v. State, 417 So.2d 589 (Ala.Cr.App.1982); Wysinger v. State, 448 So.2d 435 (Ala.Cr.App.1983). There is a prima facie presumption against error when a trial judge immediately instructs the jury to disregard an improper question or remark. Mallory v. State, 437 So.2d 595 (Ala.Cr.App.1983); Kelley v. State, 405 So.2d 731 (Ala.1981). In the case at bar, the trial judge thoroughly instructed the jury to disregard the prosecutor’s improper question.”
Ringer v. State, 489 So.2d 646, 650 (Ala.Cr.App.1986).
The jury was promptly instructed to disregard the comment; therefore, no reversible error occurred.
Appellant received a fair and impartial trial. His conviction is therefore due to be affirmed.
AFFIRMED.
All the Judges concur.