The appellant, Arley C. Williamson, was indicted for sexual abuse in the first degree, § 13A-6-66, Code of Alabama 1975. A jury found the appellant guilty as charged in the *Page 779 
indictment. The appellant was sentenced to ten years' imprisonment. The sentence was split pursuant to the Alabama Split Sentence Act and the appellant was required to serve one year in prison and granted five years' probation. The conditions of his probation were that the appellant have no contact with the children who testified that he had sexually abused them and that he pay restitution, which was to be used for counseling for the victim.
The evidence presented during the trial tended to show the following. The appellant is the paternal grandfather of the victim, A.W. A.W. was nine years old when she testified at trial. A.W. testified that she often stayed at her grandfather's house when her mother and father worked. She testified that she sometimes spent the night at her grandfather's house. A.W. testified as to 3 incidents when her grandfather touched her "private parts." She said that on one occasion, when A.W. was approximately six years old, she was on the couch in the den and her grandfather came into the den and sat next to her to watch television. A.W. testified that she was wearing a nightgown and that her grandfather reached under her nightgown and panties and touched her "private parts" and "pressed down."
A.W. testified that on another occasion, also when A.W. was about six years old, A.W. was on the floor in the den, coloring. She testified that her grandfather sat on the floor beside her, that he put his hand underneath her skirt, and that he pushed his fingers inside her "private parts." The third incident occurred sometime during the period beginning in September 1990 and ending in December 1990. A.W. testified that on this occasion she was on the couch in the den watching television. She said that her grandfather sat down next to her on the couch, put his hand under her skirt, and "pressed down" on her "private parts." A.W. testified that it hurt when her grandfather touched her on these occasions.
The State also presented the testimony of Dr. Christy Mulcahey, a gynecologist who has had experience in examining sexually abused children. Dr. Mulcahey testified that she took a medical history of A.W. and that she examined A.W. She said that she found that A.W.'s hymen had been "disrupted," which was consistent with vaginal penetration. According to Dr. Mulcahey, the tissue in A.W.'s vagina was also scarred. She testified that it was her opinion that the vaginal penetration had been caused by an object, larger than the vaginal opening, which had been put into A.W.'s vagina.
Over the objection of defense counsel, the trial court allowed the State to elicit testimony from L.B., a ten year old friend of A.W. L.B. testified that on occasion she spent the night with A.W. at the appellant's house. She said that she and A.W. slept with one another in the same bed on those occasions. She testified that one night, apparently in May 1990, when L.B. stayed at the appellant's house, the appellant was reading to A.W. and L.B. She said that he was lying in between them as he read. A.W. turned her back to the appellant and appeared to L.B. to be sleeping. L.B. testified that the appellant was wearing pajamas and that when it appeared that A.W. was sleeping he asked L.B. to rub his stomach. L.B. further testified that the appellant asked her to move her hand down until her hand was in his pants and that he told her to rub what she called his "private." L.B. said that she never discussed the incident with A.W. L.B. testified, that a week after the incident, L.B. told her mother what had happened.
Cynthia Johnson, a social worker with the Department of Human Resources ("D.H.R.") who was assigned to A.W.'s case, testified that A.W.'s maternal grandmother brought A.W.'s suspected abuse to the attention of D.H.R. Johnson testified that when she initially interviewed A.W., A.W. denied that her grandfather had touched her sexually. However, during a second interview with A.W. by another social worker, which Johnson watched, A.W. discussed the sexual abuse by her grandfather.
Johnson testified that A.W. had been placed in the custody of D.H.R. for protective purposes because A.W. had stated that she had told her father about her grandfather's abuse, but her father took no action to stop the abuse. A.W. was returned to her parents' custody after a few months. *Page 780 
Jeannie Curry, the appellant's daughter who lived with the appellant during the time that the appellant allegedly sexually abused L.B., testified on the appellant's behalf. Curry essentially testified that she was in the position to observe any inappropriate activity at the appellant's house and did not see any sexual misconduct. She further testified that L.B. had never indicated that she was afraid of the appellant, and that L.B. did not want to leave the appellant's house when it was time to go home. Curry also testified that when asked A.W. denied that the appellant touched her.
The appellant's wife testified that she was also in a position to observe any sexual misconduct that occurred in their house and that she did not see any sexual abuse. She also testified that A.W. suffered an injury at school when a child stepped on A.W.s vaginal area while A.W. was sitting on the floor. She stated that A.W.'s vaginal area bled from the injury, but that A.W. was not taken to a doctor for treatment.
The defense also presented testimony from Dr. James Selkin, a clinical psychologist, and an expert in evaluating sex offense cases and in analyzing techniques used in interviewing allegedly abused children. Dr. Selkin testified that after reviewing recorded interviews of A.W., it was his opinion that the interviews were too long, that the settings of the interviews were inappropriate, that the interviewer continually urged the child to tell the truth, implying that when A.W. first denied any abuse that she was lying, and that the interviewer was motivated to obtain statements from the child to create a case of sexual abuse against the appellant.
A.W.'s mother testified that on several occasions after the allegations arose A.W. denied that she had been sexually abused by her grandfather. She testified that after A.W. was interviewed about the alleged sexual abuse, A.W. was withdrawn and nervous. She further testified that she and A.W.'s father were told that A.W. could be taken away from them if they did not cooperate with D.H.R. in the investigation of the allegations. A.W.'s mother further testified that A.W. was taken from her custody for a period but was returned to her custody when she agreed to assist in the prosecution of the appellant.
Ms. Dale McKeever, a family counselor, testified that she had interviewed A.W. and that A.W. had stated that her grandfather had never touched her "in a bad way." McKeever stated that A.W. appeared upset that the adults did not believe her when she said that her grandfather had not sexually abused her. However, McKeever stated that it is not unusual for a child who has been sexually abused to deny that the abuse occurred.
For rebuttal, the State presented the testimony of Maribeth Thomas, a crisis intervention counselor, who had interviewed A.W. on two occasions. She stated that part of her job was to coordinate the investigation by D.H.R. and the police. Thomas acknowledged that during the first one-half hour of the initial interview, A.W. denied that her grandfather had sexually abused her. She said that after she told her "God knows the truth," A.W. told Thomas about the incidents.
The only issue presented for review is whether the trial court erred to reversal in allowing the State to present L.B.'s testimony as to the alleged collateral sexual misconduct.
Under the general exclusionary rule, evidence of collateral offenses of the accused is inadmissible to prove guilt of the now charged offense. Anonymous v. State, 507 So.2d 972, 973
(Ala. 1987). However, evidence of collateral offenses may be admissible under certain exceptions to the exclusionary rule or for "other purposes" than to prove the accused's guilt. These exceptions or other purposes include motive, intent, identity, or common plan, design, or scheme. Bowden v. State,538 So.2d 1226, 1227 (Ala. 1988); Atkisson v. State, [Ms. CR-91-1825, May 28, 1993] 1993 WL 179526 (Ala.Crim.App. 1993); Register v.State, [Ms. CR-92-179, May 28, 1993] 1993 WL 179839 (Ala.Crim.App. 1993).
In this case, the State argues that it offered L.B.'s testimony to establish the appellant's intent to sexually gratify himself through sexual contact with A.W. However, the statute defining the offense of sexual *Page 781 
abuse in the first degree does not require a showing of specific intent on the part of the perpetrator. See Ala. Code
1975, § 13A-6-66. Intent may be established from the act itself. Anonymous, 507 So.2d at 975; Ex parte Cofer,440 So.2d 1121, 1124 (Ala. 1983). Therefore, L.B.'s testimony was not admissible under the intent exception to the general exclusionary rule.
L.B.'s testimony was admissible to establish the identity of the perpetrator. In Anonymous, the Alabama Supreme Court held that the identity of the person who committed the acts must be a "real and open issue" to admit evidence of a collateral sexual offense under the identity exception to the general exclusionary rule. 507 So.2d at 975. If the accused merely denies that the acts ever occurred and there is no evidence other than the victim's testimony that the acts occurred, there is no "real and open issue" of identity. Id.; see Bowden, 538 So.2d at 1230; see also Atkisson (Judge Bowen, concurring). In his concurrence in Atkisson, Judge Bowen stated:
 "Apparently, in order for there to be a 'real and open issue' of identity in a prosecution for a sexual offense, there must be some evidence, apart from the victim's testimony that the charged acts occurred. The 'other evidence' might consist of medical testimony concerning the victim's injuries, or testimony that the victim became pregnant or had an abortion, see Bowden v. State, 538 So.2d 1226, 1230 (Ala. 1988).
1993 WL at *6.
In Bowden, although the accused denied that he had raped the victim, the Alabama Supreme Court held that identity of the accused in that case was in issue because the victim had become pregnant, and thus there was evidence that the rape had occurred. 538 So.2d at 1234.
In this case, the appellant denies that he sexually abused A.W. However, the State presented medical testimony from Dr. Mulcahey that A.W. was sexually abused. A.W.'s hymen had been disrupted and there was vaginal scar tissue, which Dr. Mulcahey concluded was consistent with vaginal penetration. Thus, there was evidence, apart from A.W.'s testimony that A.W. had been sexually abused. Sufficient evidence existed to present "a real and open" issue concerning who had sexually abused A.W. L.B.'s testimony tended to establish that the appellant had had sexual contact with her near the time at which he had sexual contact with A.W. Here, the victim of the collateral sexual offense was approximately the same age as the victim in this case, and the sexual abuse of both victims took place in the appellant's house. Clearly, L.B.'s testimony tended to establish the identity of the person who sexually abused against A.W. Therefore, L.B.'s testimony was admitted for a purpose other than to show the guilt of the accused.
In arriving at the conclusion that L.B.'s testimony was properly admitted under the identity exception to the general exclusionary rule, this Court also analyzed the facts of this case under the factors set forth in Bowden to determine whether the probative value of the evidence of the collateral sexual offense outweighed any prejudicial effect to the appellant. The factors analyzed are: (1) the offense charged; (2) the circumstances surrounding the offense charged and the collateral offense; (3) the other collateral evidence offered at the trial; and (4) the other purpose for which it is offered. Bowden, 538 So.2d at 1237-38.
In this case, the offense charged is sexual abuse in the first degree. The appellant's alleged sexual misconduct with L.B. would also constitute the crime of sexual abuse in the first degree if the appellant had been prosecuted for that sexual misconduct.
The circumstances surrounding the offense charged and the collateral offense are similar. A.W. and L.B. were approximately the same age at the time of the offenses, both were subjected to the abuse in the appellant's house, and one of the incidents that occurred with A.W. occurred at about the same time as the incident with L.B. We find it to be insignificant that in committing the offense against A.W. the appellant touched A.W., while in committing the offense against L.B. he had L.B. touch him. In J.D.S. v. State, 587 So.2d 1249,1255 (Ala.Crim.App. 1991), this court found it inconsequential that *Page 782 
the charged offenses involved forcing the victim to perform fellatio upon the accused while the uncharged collateral offense involved the accused's performing fellatio upon the victim. To be admissible, the evidence of collateral sexual misconduct need not be of the exact nature of the sexual misconduct with which the accused is charged.Atkisson, 1993 WL at *2; see Register, 1993 WL at *5.
We have also considered the strength of the other evidence offered at the trial. A.W. was subjected to rigorous cross-examination. After D.H.R. was notified of the appellant's alleged sexual misconduct, D.H.R. removed A.W. from her parents' home. While away from her home, A.W. was questioned by social workers, a doctor, a deputy sheriff, a counselor, and her family. At first, A.W.'s mother and father did not believe A.W. when she said that her grandfather had sexually abused her. Some of A.W.'s family members testified that the appellant could not have committed the acts because he lacked opportunity, implying that A.W. was lying. Therefore, A.W.'s testimony was suspect. As we stated in J.D.S. and subsequent cases, "there was a genuine need to corroborate and substantiate the testimony of the victim." 587 So.2d at 1255 (citing Ex parte Smith, 581 So.2d 531 (Ala. 1991); Atkisson, 1993 WL at *5; Register, 1993 WL at *6. L.B.'s testimony corroborated the testimony of A.W.
Last, L.B.'s testimony was admitted for a purpose other than to establish the guilt of the appellant. When identity is a "real and open issue," evidence of a collateral sexual offense is admissible to establish that the accused actually committed the crime with which the accused is charged. Bowden, 538 So.2d at 1234.
Applying the Bowden factors to this case, we hold that the trial court properly admitted the testimony of L.B. under the identity exception to the general exclusionary rule because the probative value of the testimony outweighed any prejudicial effect. The fact that the prosecutor offered L.B.'s testimony for an erroneous reason, to establish intent, is irrelevant because a sound reason for admissibility exists. Register, 1993 WL at *4; see J.D.S., 587 So.2d at 1251.
The judgment of the trial court is due to be affirmed.
AFFIRMED.
All the Judges concur.