JOINER, Judge.
R.C.W. appeals his convictions for first-degree rape, see § 13A-6-61, Ala.Code 1975; incest, see § 13A-13-3, Ala.Code 1975; first-degree sexual abuse, see § 13A-6-66, Ala.Code 1975; and two counts of first-degree sodomy, see 13A-6-63, Ala.Code 1975. We reverse and remand.
At trial, T.W., R.C.W.’s biological daughter, testified that her earliest memory of sexual abuse involving her father occurred when she was 9 years old and in the fourth grade; T.W. stated that she was then 18 years old. T.W. stated that she was forced to perform oral sex on R.C.W. on several occasions. T.W. testified that on one occasion when she was 10 years old, R.C.W. forced her to have sexual intercourse with him. T.W. stated that on another occasion when she was 11 years old, R.C.W. performed oral sex on T.W. and had sexual intercourse with her. T.W. stated that when she was 13 years old, she informed her mother about the instances of sexual abuse, after which the sexual abuse stopped. Lastly, T.W. testified that she did not report any of these events to authorities but agreed to “all just be a family for my little brother and act like nothing ever happened.” (R. 125.)
Pa. W., T.W.’s mother, testified that she was married to R.C.W. at the time of trial, although divorce proceedings were pending. Pa. W. stated that she had a conversation with T.W. when T.W. was 12 or 13 years old regarding T.W.’s conduct; specifically, Pa. W. stated that T.W. had started acting distant and started locking her bedroom door. Pa. W. stated that after T.W. told her about the sexual abuse, she took T.W. to the gynecologist. Pa. W. stated that she thereafter confronted R.C.W. regarding the sexual abuse, at which time R.C.W. stated that he had “made some mistakes” and that “[h]e was sorry” and swore to her that “it would never happen again.” (R. 171-72, 211.) Pa. W. testified that at a later date during a recorded telephone conversation, she asked R.C.W. whether anything had happened between him and T.W. since Pa. W. had initially confronted him about the sexual abuse; Pa. W. testified that R.C.W. stated “[n]o, not one fucking thing.” (R. 181.) Lastly, Pa. W. stated that a family *92 conflict had begun after allegations had been made that T.W. was having a relationship with an older man when she was 15 years old.
C.F., a former wife of R.C.W.’s, testified that while she was married to R.C.W., he was indicted and convicted for several sex offenses against her daughter M.W.T., R.C.W.’s biological daughter.
P.W., who was 27 years old at the time she testified, stated that on one occasion when she was 10 years old, R.C.W., her biological father, came into her room after everyone in the house was asleep and touched her “[o]n my vagina and my butt.” (R. 147.) P.W. stated that on several occasions, R.C.W. “touched [her vagina] with his penis as well [as] his mouth” and would force her to perform oral sex on him. (R. 148.)
M.W.T., who was 34 years old at the time of trial, testified that at a young age she was inappropriately touched by R.C.W. and that R.C.W. forced her to perform oral sex on him.
Alex Bassinger, Susie Bassinger, Rhonda Gainey, Britney Booker, R.W., R.C.W.’s biological son, and G.S., R.C.W.’s brother, all testified that T.W. had a poor reputation for truthfulness. Susie Bassinger, Gainey, Booker, R.W., and G.S. all testified that T.W. appeared to have a good relationship with R.C.W.
The jury returned guilty verdicts on all counts charged in the indictments: first-degree rape, incest, first-degree sexual abuse, and two counts of first-degree sodomy. The circuit court sentenced R.C.W. to life imprisonment on the incest and first-degree-sexual-abuse convictions and to life imprisonment without the possibility of parole on the first-degree-rape and both first-degree-sodomy convictions, all pursuant to the Alabama Habitual Felony Offender Act. The circuit court also ordered R.C.W. to pay court costs and a $50 crime victims compensation assessment on each conviction. This appeal followed.
On appeal, R.C.W. argues that the trial court’s jury instruction allowed the jury to consider collateral-act evidence under Rule 404(b), Ala. R. Evid., for purposes as to which there were not open and contested issues at trial. We agree. Because we reverse on this ground, we pretermit discussion of other issues raised by R.C.W.
R.C.W. argues that the trial court erred when it allowed into evidence “other acts” testimony under Rule 404(b), Ala. R. Evid. Specifically, R.C.W. argues that the evidence [1] of prior incidents of sexual abuse perpetrated by R.C.W. against his two other biological daughters, M.W.T. and P.W., was erroneously admitted because, he says, (1) the evidence was offered for purposes as to which there were not real and open issues at trial and (2) the trial court “improperly allowed the jury to consider the evidence for those improper purposes.” (R.C.W.’s brief, p. 15.)
Before trial, the State filed notice of its intent to introduce Rule 404(b), Ala. R. Evid., evidence regarding the prior incidents of sexual abuse. R.C.W. argued that the evidence was too remote and was not necessary to the State’s case because, he said, motive, intent, and identity would not be contested at trial. Further, he argued that the prejudicial effect of the evidence outweighed its probative value. (C. 9-10, 12-14.) The State argued that the evidence was admissible pursuant to Rule 404(b), Ala. R. Evid., for the purposes of showing motive, opportunity, intent, or *93 plan. After hearing arguments, the trial court denied R.C.W.’s motion in limine. (C. 82.) Later, at the close of all the evidence, the following colloquy regarding jury charges ensued:
“[The court]: Okay. Let’s try this one. I did borrow some of yours and some of this is original. But I guess nothing is ever really original.
“You have heard testimony and evidence regarding other crimes — regarding crimes, wrongs, or bad acts regarding the defendant. The defendant is only on trial for the charges that I have read to you in the indictments, not for anything else. Evidence of crimes, wrongs, or bad acts was allowed in evidence not to prove the defendant is a bad person or a person of bad character because that would be wrong and impermissible or that it made him more likely to commit the crimes charged in these indictments because that would also be impermissible. The evidence of other acts, wrongs, or crimes was allowed into evidence for one narrow purpose only. That is, it may be considered by you only for the limited purpose as regarding the defendant’s motive, opportunity, intent or plan.
“[Prosecutor]: Perfect.
“[The court]: I know you don’t agree with the whole line. But is that about as good as you think we can get it? I’m not asking you to agree with any of it but if you think of any other way to tweak it to make it any less—
“[Defense counsel]: Judge, the main question I would have, what was the purposes you said again?
“[The court]: Motive, opportunity, intent or plan. And one of the reasons I had let it in all along is there’s one of the cases, and I thought I had it and maybe had it up here, is maybe it’s — and obviously don’t want to get into this, that — maybe the one you gave me, Nicki, that the Court then let it in, I think it was intent in order to show the jury that a defendant could in fact have a plan — intent or plan to have sex with girls of this age which a normal person would [find] unbelievable. I think it was intent. This may be it. Of course, it takes us back to another case, Ex parte Hatcher. But the Alabama Supreme Court stated in Ex parte Hatcher, 646 So.2d 676, testimony concerning the rape was relevant to the question of Hatcher’s motive which was a — which a reasonable person could find was an unnatural sexual desire for small children. And in this case, which was Worthy v. State, [724 So.2d 55 (Ala.Crim.App.1998),] the incidents testified by appellant’s daughters were sufficiently similar to the present offense as they include evidence from which the jury could reasonably — the jury reasonably could conclude that the appellant was motivated by an unnatural desire for all three of his young female victims. So that’s kind of the kitchen sink on [Rule] 404(b). I think when I get my grammar cleaned up I think that will kind of do it. We’ve got to take into account testimony related to the prior convictions. So I’ll get that cleaned up a bit.
“Let’s get to the rest of — Your sixteen, I think, is covered now .... ”
(R. 347-50.) The trial court thereafter charged the jury as follows, in pertinent part:
“You have heard testimony and evidence regarding crimes, wrongs or bad acts regarding the Defendant. The Defendant is on trial only for the criminal charges that I have read to you and the indictments, not for anything else. Evidence of other crimes, wrongs, or bad acts was allowed into evidence not to prove that the Defendant may or may *94 not be a bad person or may or may not be a person of bad character or that it made him more likely to commit the crimes charged in these indictments, because that would be wrong and legally impermissible. The evidence of other crimes, wrongs or bad acts was allowed into evidence for one narrow purpose only. That is, it may be considered by you for the limited purpose as regarding the Defendant’s motive, opportunity, intent, or plan.”
(R. 415-16.) Before the case was submitted to the jury, defense counsel objected to the charge and stated:
“Judge, with regard to the charge on [Rule] 404(b) evidence. The portion where you said that it’s for the limited purpose of motive, opportunity, or plan, I would submit that those are not matters in controversy and by having it go — I believe that that is different than what the State had said originally, was their purpose for offering that evidence. We except and object to the Court giving it with that broad of reason for it coming in.”
(R. 436-37.)
On appeal, R.C.W. argues that the trial court’s admission of the State’s evidence of collateral acts was reversible error because, he says, the purposes for which the State offered the collateral-acts evidence “were never placed in issue by [R.C.W.] at trial.” (R.C.W.’s brief, p. 20.) “For collateral-act evidence to be admissible for one of the ‘other purposes’ in Rule 404(b), there must be ‘“a real and open issue as to one or more of those ‘other purposes.’ ” ’ ” Draper v. State, 886 So.2d 105, 117 (Ala.Crim.App.2002) (quoting Gillespie v. State, 549 So.2d 640, 645 (Ala.Crim.App.1989), quoting in turn Bowden v. State, 538 So.2d 1226, 1227 (Ala.1988)). The State argues, however, that the evidence of collateral sexual misconduct involving T.W.’s half sisters was admissible for the purpose of showing motive. Indeed, the State is correct on this point. See Bowden, supra. See also Atkisson v. State, 640 So.2d 33, 38 (Ala.Crim.App.1993) (holding evidence of collateral sexual offenses perpetrated by the defendant against his stepdaughter admissible under the motive exception in prosecution for first-degree sodomy and first-degree sexual abuse against his natural daughter).
The State goes on to assert that “[a]l-though there may have been other reasons cited as to why the evidence was offered, that is irrelevant because ‘[t]he fact that the prosecutor gave an erroneous reason in arguing for the admissibility of the evidence is unimportant when there is, in fact, a valid reason for admissibility.’ ” (State’s brief, p. 11) (quoting Ex parte Register, 680 So.2d 225, 226 (Ala.1994)). We disagree with the State. The jury may not consider evidence of collateral sexual misconduct for an implausible purpose. See Marks v. State, 94 So.3d 409, 413 (Ala.Crim.App.2012).
“The rule regarding admissibility of prior misconduct by a criminal defendant has been well stated in C. Gamble, McElroy’s Alabama Evidence § 69.01(1) (3rd ed.1977):
“ ‘This is a general exclusionary rule which prevents the introduction of [collateral] criminal acts for the sole purpose of suggesting that the accused is more likely to be guilty of the crime in question. This rule is generally applicable whether the other crime was committed before or after the one for which the defendant is presently being tried.
“ ‘This exclusionary rule is simply an application of the character rule which forbids the state to prove the accused’s bad character by particular deeds. The basis for the rule lies in *95 the belief that the prejudicial effect of [collateral] crimes will far outweigh any probative value that might be gained from them. Most agree that such evidence of [collaterál] crimes has almost an irreversible impact upon the minds of the jurors.’ ”
Ex parte Cofer, 440 So.2d 1121, 1128 (Ala.1988).
In Anonymous v. State, 507 So.2d 972, 975 (Ala.1987), the Alabama Supreme Court reversed this Court’s judgment and held that, under the facts of that case, the evidence of other collateral acts was inadmissible under the “identity” and “intent” exceptions to the general exclusionary rule. The defendant in that case was convicted of three counts of first-degree rape and three counts of incest; the victim was one of his daughters, who was an adult at the time the alleged acts occurred. The Court reasoned:
“The identity of the person who actually committed the acts with which the defendant was charged was not at issue. The defendant did not argue that ‘someone else committed the acts with which he was charged’; instead, he merely denied that the acts ever occurred. Therefore, because there was no ‘real and open’ issue concerning identity, the collateral acts could not be admissible as going toward such an issue. See Cofer, supra; [Ex parte] Killough, [438 So.2d 333 (Ala.1983) ].
“Neither can the ‘intent’ exception be applied in this case. Under §§ 13A-6-60 and -61, Code of 1975, rape in the first degree does not require any specific criminal intent. Similarly, no specific criminal intent, other than knowledge of relationship, is required under § 13A-13-3, Code of 1975, defining the crime of incest. The intent exception is simply not applicable in a case that requires no specific criminal intent as a prerequisite to conviction. See McElroy’s § 69.01(5) and cases cited therein. As was explained by Justice Shores in Cofer, supra, any intent necessary to this type of crime could be inferred by the jury from the testimony about the act charged:
“ ‘This intent may be inferred by the jury from the act itself. Parker v. State, 406 So.2d [1036,] 1039 [ (Ala.Crim.App.1981) ]. The prosecu-trix testified that Cofer kissed her, removed some of her clothing, inserted his finger into her, and lay close to her. If the jury believed her testimony, it could infer that Cofer had the requisite intent and find him guilty of the offense. There is, therefore, no real and open issue about his intent, and the evidence of the prior rape was erroneously allowed to prove Cofer’s intent. ’
“(Emphasis added.) 440 So.2d at 1124.”
507 So.2d at 975.
In the present case, R.C.W. was charged with crimes — first-degree rape, incest, first-degree sexual abuse, and sodomy — that do not require any specific criminal intent. The intent necessary to these types of crimes may be inferred by the jury from the acts themselves. See Anonymous, supra. Accordingly, the testimony regarding the prior sexual mistreatment of R.C.W.’s daughters was inadmissible under Rule 404(b), Ala. R. Evid., to prove intent.
Additionally, there was no real and open issue as to the other purpose, i.e., showing a common plan, for which the jury was instructed it could consider the evidence. This Court has held that the common plan, scheme, or design exception applies only when identity is actually at issue. See Campbell v. State, 718 So.2d 123, 128-29 (Ala.Crim.App.1997) (quoting Register v. State, 640 So.2d 3 (Ala.Crim.App.1993), *96 aff'd, 680 So.2d 225 (Ala.1994)). The Alabama Supreme Court has also held that the identity exception is coextensive with the exception for plan, scheme, or system. See Ex parte Darby, 516 So.2d 786, 789 (Ala.1987); 1 Charles W. Gamble & Robert J. Goodwin, McElroy’s Alabama Evidence § 69.01(6) (6th ed. 2009) (“Indeed, there is some judicial language that these two exceptions — plan and identity— are co-extensive in the sense of rendering plan or scheme unavailable unless identity is clearly at issue in the case.”). Here, there was nothing in the record that indicates that R.C.W.’s identity was in issue. R.C.W. never alleged that someone else was the perpetrator of the crimes. See Mothershed v. State, 596 So.2d 47, 48 (Ala.Crim.App.1991). Thus, the evidence of the collateral sexual misconduct was inadmissible to prove plan.
As noted above, the State correctly argues that the evidence of collateral sexual misconduct involving T.W.’s half sisters was admissible under Rule 404(b) to prove motive. The Alabama Supreme Court stated in Bowden:
‘“Motive is defined as “an inducement, or that which leads or tempts the mind to do or commit the crime charged.” Spicer v. State, 188 Ala. 9, 11, 65 So. 972, 977 (1914). Motive has also been described as “that state of mind which works to ‘supply the reason that nudges the will and prods the mind to indulge the criminal intent.’ ” [Charles Gamble, Character Evidence: A Comprehensive Approach 42 (1987) ].
“ ‘Furthermore, testimony offered for the purpose of showing motive is always admissible. McClendon v. State, 243 Ala. 218, 8 So.2d 883 (1942). Accord, Donahoo v. State, 505 So.2d 1067 (Ala.Crim.App.1986). “ ‘It is permissible in every criminal case to show that there was an influence, an inducement, operating on the accused, which may have led or tempted him to commit the offense.’ McAdory v. State, 62 Ala. 154 [ (1878) ].” Nickerson v. State, 205 Ala. 684, 685, 88 So. 905, 907 (1921).’ ”
Hatcher v. State, 646 So.2d 676, 679 (Ala.1994) (quoting Bowden, 538 So.2d at 1235 (emphasis in Bowden)). In Ex parte Register, 680 So.2d 225, 227 (Ala.1994), the defendant was charged with various sex crimes against his two minor stepdaughters. At trial, the State presented evidence of collateral acts of sexual misconduct allegedly occurring seven to nine years before the charged offense against his natural daughter; the defendant was convicted of first-degree sodomy and first-degree sexual abuse. On appeal, the Alabama Supreme Court affirmed this Court’s judgment holding that the evidence of the alleged sexual misconduct was properly admitted to prove motive in the rape and sexual abuse of his stepdaughter. Specifically, the Court stated:
“Under the facts of this case, we conclude that the trial court did not abuse its discretion in permitting evidence of Register’s collateral sexual misconduct committed upon his natural daughter, because that evidence had some tendency to show that Register had a passion or propensity for unusual and abnormal sexual relations. See C. Gamble, Character Evidence, supra, at 45-46.”
680 So.2d at 228. See Garner v. State, 977 So.2d 533, 536-38 (Ala.Crim.App.2007) (testimony regarding collateral acts of sexual abuse was relevant to show that defendant’s “unnatural sexual desire for young girls” was his motive for committing charged sexual abuse); see also Bedsole v. State, 974 So.2d 1034, 1038-40 (Ala.Crim.App.2006) (collateral sex acts admissible under Rule 404(b) to prove that defendant was “motivated by an unnatural sexual desire for young girls”).
*97 Here, as previously noted, R.C.W. was charged with various sex crimes against T.W. The prior acts as to which evidence was admitted were as follows: P.W. testified that when she was 10 years old, R.C.W. would come into her bedroom at night and touch P.W. on her vagina and buttocks. P.W. testified that R.C.W. “touched [her vagina] with his penis as well [as] his mouth.” (R. 148.) P.W. further testified that R.C.W. would force P.W. to perform oral sex on him. M.W.T. testified that at a young age, she was inappropriately touched by R.C.W. M.W.T. testified that R.C.W. forced her to perform oral sex on him. Also, C.F. testified that R.C.W. was indicted and convicted of several sexual offenses against M.W.T.
At trial, the State offered the testimony of Pa. W. that corroborated T.W.’s testimony. Thus, the State did not need to offer P.W. and M.W.T.’s testimony in order to corroborate T.W.’s testimony. Compare Allen v. State, 624 So.2d 650, 653 (Ala.Crim.App.1993) (“In this case, there was no other collateral evidence offered at the trial. Thus, [the] State needed to offer T.H’s testimony regarding the collateral sexual misconduct to corroborate the victim’s testimony.”). However, the State offered the collateral offenses committed against P.W. and M.W.T. in order to establish R.C.W.’s “unnatural sexual desire for the small children living in his household” as a motive for the present offense. Hatcher, supra. Therefore, the collateral acts were relevant and admissible to prove R.C.W.’s motive.
Even though the collateral-act evidence was admitted for the proper purpose of proving motive,[2] it was reversible error for the trial court to allow the jury to consider the evidence of collateral sexual misconduct involving T.W.’s half sisters for the improper purposes of intent, opportunity, and plan.
In Marks, we held:
“The circuit court’s instructions in this case permitted the jury to consider -the collateral-act evidence for the purposes of showing motive, opportunity, plan, knowledge, and modus operandi. On appeal, the State argues that opportunity and plan were at issue and that, therefore, the circuit court properly instructed the jury as to those purposes. The State also argues that the evidence was admissible to prove identity and preparation — purposes for which the jury was not instructed regarding the collateral-act evidence. The State does not address the additional purposes— motive, knowledge, or modus operandi— on which the jury was instructed it could consider the collateral-act evidence in this case.
“Although not as broad as the instructions at issue in Ex parte Billups, [86 So.3d 1079 (Ala.2010),] the instruction in this case regarding the permissible use of the collateral-act evidence was too general and authorized the jury to consider the evidence for ‘implausible purposes,’ such as identity. For example, I.C. identified Marks, and Marks admitted that he knew I.C.; he denied, however, that he had had sex with I.C. or that he had raped her. Thus, I.C.’s and Marks’s credibility, not Marks’s identity, *98 were at issue. Compare Gibson v. State, 677 So.2d 238, 240 (Ala.Crim.App.1995) (identity was at issue where the accused contended that someone else committed the sexual offenses with which he was charged), with Mothershed v. State, 596 So.2d 47 (Ala.Crim.App.1991) (evidence of collateral sexual acts of the accused against the alleged victims was inadmissible to prove identity where the accused denied committing the offenses with which he was charged and he did not allege that the crimes were committed by someone else). Thus, the circuit court’s instructions were erroneous because they permitted the jury, over Marks’s objection, to consider the collateral-act evidence for purposes not at issue in the case. Given the graphic nature of the collateral-act evidence at issue here, the ‘confusion of the jury and the probable prejudice to [Marks,]’ as a result of the erroneous instruction ‘is obvious.’ Ex parte Billups, 86 So.3d at 1086 (quoting Billups v. State, 86 So.3d 1032, 1079 (Ala.Crim.App.2009) (Welch, J., dissenting)). Thus, in accordance with the Supreme Court’s decision in Billups, the jury instructions in this case constituted reversible error.
“For the above-stated reasons, Marks’s conviction for rape in the first degree is hereby reversed and this case is remanded to the Mobile Circuit Court for proceedings consistent with this opinion.”
94 So.3d at 413.
Here, as in Marks, the trial court’s instructions permitted the jury to consider the collateral-act evidence for purposes not at issue in this case. The trial court instructed the jury as to the purposes of motive, opportunity, intent, and plan. Although the State addresses motive, the State does not address the additional purposes — intent, opportunity, and plan — for which the jury was instructed it could consider the evidence of collateral sexual misconduct.
“Thus, the circuit court’s instructions were erroneous because they permitted the jury, over [R.C.W.]’s objection, to consider the collateral-act evidence for purposes not at issue in the case. Given the graphic nature of the collateral-act evidence at issue here, the ‘confusion of the jury and the probable prejudice to [R.C.W.,]’ as a result of the erroneous instruction ⅛ obvious.’ Ex parte Billups, 86 So.3d at 1086 (quoting Billups v. State, 86 So.3d 1032, (Ala.Crim.App.2009) (Welch, J., dissenting)). Thus, in accordance with the Supreme Court’s decision in Billups, the jury instructions in this case constituted reversible error.” [3]
Marks, 94 So.3d at 413-14.
Accordingly, we reverse the judgment of the trial court and remand this cause for *99 further proceedings consistent with this opinion.
REVERSED AND REMANDED.
WELCH and BURKE, JJ., concur.
WINDOM, P.J., and KELLUM, J., dissent, with writing by WINDOM, P.J., joined by KELLUM, J.

. In addition to the testimony of M.W.T. and P.W., the State's evidence included C.F.’s testimony regarding R.C.W.’s 1984 indictment and guilty-plea conviction for two counts of first-degree sodomy and two counts of sexual abuse against M.W.T.

. The State also contends that the collateral-act evidence was admissible to show RX.W.’s opportunity to commit the charged offenses. Our caselaw regarding opportunity as a possible use of other-acts evidence is unclear. See 1 Charles W. Gamble & Robert J. Goodwin, McElroy’s Alabama Evidence § 69.01(12) (6th ed.2009). Regardless, the State does not address the additional purposes for which the jury was instructed it could consider the collateral-act evidence in this case. Marks, supra.

. The jury instruction in this case, as we have noted, like the instruction in Marks, allowed the jury to consider the Rule 404(b) evidence for several purposes not at issue. The dissent argues that any error in allowing the jury to consider the collateral-act evidence for those purposes was harmless because, the dissent reasons, the jury could not "draw an inference that the evidence could not logically support.” In other words, the dissent’s position is that although the jury was instructed that it could consider the Rule 404(b) evidence for purposes not at issue, we should conclude that because those purposes were not at issue, the jury "logically” must not have considered the evidence for those purposes. That position is inconsistent with Bill-ups and Marks, as well as with our caselaw holding that we presume the jury followed the instructions given to it by the trial court. See Ex parte Belisle, 11 So.3d 323, 333 (Ala.2008) ("[A]n appellate court presumefs] that the jury follows the trial court's instructions unless there is evidence to the contrary.' " (quot *99 ing Cochran v. Ward, 935 So.2d 1169, 1176 (Ala.2006))).