On May 15, 2003, Mickey McAdory was convicted of possession of a controlled substance (cocaine), a violation of §13A-12-212(a)(1), Ala. Code 1975. On August 15, 2003, the trial court sentenced him, as a habitual offender, to 15 years in prison, but the trial court, noting McAdory's good behavior following his conviction, suspended the sentence and placed him on supervised probation for 5 years. See § 13A-5-9(c)(1), Ala. Code 1975.[1] This appeal followed. We reverse and remand.
The facts adduced at trial indicate that, on January 23, 2002, McAdory was arrested when he was found in possession of a "coin purse" containing six crack rocks. Law enforcement officers testified that, during a routine patrol of the housing project where McAdory resided, McAdory was found to be in possession of crack cocaine. Residents of the housing project testified that McAdory was targeted by law enforcement and that McAdory's arrest did not happen as the officers alleged.
McAdory raises several issues on appeal, including an argument that the trial court erred by allowing his prior drug convictions to be admitted into evidence in violation of Rule 404(b), Ala. R. Evid. Because we reverse and remand on that issue, we *Page 1031 
do not address the remaining issues or the lack of mandatory fines assessed against McAdory.
 At Trial
On September 18, 2002, before the trial began, the State filed a "Notice of Intent to Introduce 404(b) Evidence at Trial" that referred to McAdory's criminal record since 1983 and included two prior drug charges from 1994 and 1998. (C. 34.) The State did not allege any purpose for which the criminal record was offered. McAdory responded, arguing that the State had failed to establish a foundation for the admission of such evidence and that he would be prejudiced by the admission of that evidence. On May 12, 2003, the trial court conducted a pretrial hearing, during which it considered the State's 404(b) motion. The State averred that it intended to use McAdory's prior convictions "to show knowledge, . . . and not conformity therewith, but knowledge if he takes the stand to say he doesn't know about any cocaine or any crack that was found." (R. 6.) Trial counsel responded that his defense was to be that McAdory's arrest did not occur as alleged by the two law enforcement officers on the scene. (R. 9.) The trial court allowed the admission of evidence of the two prior convictions for possession of a controlled substance. The following exchange occurred:
 "THE COURT: All right. But I'm going to let [in] the prior possessions. . . . Unless he takes the stand, for impeaching. But I will let the prior — of course, now, the 404(b), that's whether he takes the stand or not, correct? . . . If he takes the stand all of this stuff is admissible to impeach him. You agree with that?
"[Defense counsel]: Yes, ma'am. . . .
". . . .
 "THE COURT: But I will let the information in to show knowledge. But, of course, you know, you have to bring the officers in. You don't just go on and just put the convictions in. So are we all on the same page with that?"
(R. 10-12.)
Officer William Stanford testified that, on January 23, 2002, at approximately 8:00 p.m., he and his partner, Officer William Hovies, were driving on 47th Street in Birmingham and turned right onto 2nd Avenue when they observed two black males standing in a field, "both looking down at something. They were so caught up in what they were looking at that they didn't realize" the police officers were there. (R. 32.) Officer Stanford testified that he and his partner, with their headlights on, "slowed down to see what they were looking at." (R. 41.) When the two looked up and saw the police car, they both "ran across the street." (R. 32.) One of the males ran into a house and was never questioned or arrested. Officer Stanford testified that that suspect was not pursued for safety reasons. Officer Stanford and his partner exited the patrol car in order to chase the other male, McAdory. Officer Stanford testified that he saw McAdory throw something from his right hand and that the object landed underneath a pickup truck. Officer Stanford testified that he picked the object up. The object was a zippered, brown coin purse. Officer Stanford opened the coin purse and found six individual baggies, each containing a rock of crack cocaine. Officer Hovies was talking to McAdory at that point. Officer Stanford told Officer Hovies to "put the cuffs on him" because he believed the substance in the coin purse to be crack cocaine. (R. 33.) Officer Stanford testified that they turned the crack cocaine into the property room at the police station, but returned the coin purse to McAdory, that is, "placed [it] in his back pocket," after McAdory had been patted *Page 1032 
down for weapons, handcuffed, and placed in the patrol car for transporting to jail. (R. 39.) Officer Stanford read into the record the intake papers from when McAdory was admitted to jail. McAdory had in his possession "a wallet, a hat, and a watch, and three hundred and fifty-one dollars." (R. 50.) No coin purse was noted.
Officer William Hovies's testimony was similar to Officer Stanford's, except that he testified that the two males were standing in the middle of the street, rather than in a field, and that both were looking into their cupped hands. While Officer Stanford was retrieving the object from under the pickup truck, Officer Hovies was asking McAdory to come back to the police car. Officer Hovies testified that McAdory voluntarily stopped running and returned to the police car. Officer Hovies then heard Officer Stanford tell him to "`cuff him'" because Officer Stanford had retrieved a coin purse containing what he thought was crack cocaine. (R. 64.) Officer Hovies testified that they did not pursue the other male because they were "actually dealing with Mr. McAdory's actions at the time" (R. 78), and that, although he knew who the other male was, he "didn't see him with anything or throw anything."
Officer Hovies then testified that he had met McAdory on a prior occasion. He testified that, in May 1997, he stopped McAdory's vehicle because the brake lights were not working. Officer Hovies testified that McAdory consented to the search of his vehicle and that he found crack cocaine in an envelope in the ashtray of the car. Officer Hovies testified that McAdory was arrested and speculated that McAdory had been convicted, at which point trial counsel objected to "this as being a collateral issue and prejudicial." (R. 68.) The trial court sustained as to any testimony regarding the conviction. After the trial court spoke to the jury regarding the fact that it would later be instructed as to the limited consideration it could give the latter portion of Officer Hovies's testimony, trial counsel moved for a mistrial on the grounds that the evidence in question was prejudicial, was of a collateral offense, and was "404(b) evidence that he has not been set in a position to have . . . applied against him at this time." (R. 69.) The trial court denied the motion stating, "I think we discussed this matter the other day. So I don't think there's any surprise in any of my ruling in this, so move on." (R. 69.)
Sgt. David Marable testified that in April 1994 he executed a traffic stop at which he stopped McAdory for failing to signal and for blocking the roadway. Sgt. Marable testified that NCIC indicated that there was an outstanding misdemeanor warrant on McAdory. Sgt. Marable arrested McAdory and inventoried his car. When asked if he found anything during the inventory, Sgt. Marable replied, "Yes." Trial counsel objected, "Your Honor, I'm going to object as to it being irrelevant and prejudicial at this time." (R. 111.) The trial court overruled the objection, and Sgt. Marable testified that his partner had found a bag of marijuana and two crack rocks in the car. The trial court then told the jury that it would later be instructed as to the limited consideration it could give the fact that McAdory had been caught with contraband in an earlier encounter with law enforcement. Later, outside the presence of the jury, trial counsel again moved for a mistrial, arguing that the evidence of the 1994 drug possession was more prejudicial than probative and that "[n]ow [the prosecutor's] laid it down where he's done something in the past[, and n]ow they're thinking he could have repeated that, and that has nothing to do with this case." (R. 114-15.) The trial court denied the motion. (R. 114.) *Page 1033 
Still outside the presence of the jury, the trial court read its proposed jury instruction regarding the 404(b) evidence to the attorneys and McAdory. The trial court instructed the parties that if they preferred a different charge, they could present her with their recommendations. The following exchange occurred:
 "[THE COURT]: And that's the reason that I am — for the record why I have allowed the 404(b) to prior possession, and that is for the limited purpose of proving the defendant's knowledge.
 "[Defense counsel]: Your Honor, at this time the defense is unclear of what knowledge this is supposed to be. Is it knowledge that something was illegal or is it knowledge of what?
 "THE COURT: Knowledge that he was in fact in possession of cocaine.
 "It's evidence for the jury's consideration. I'm not saying that they [the jurors] — and I will not tell them that the mere fact that those two prior occasions exist is a prima facie case that he was in fact in possession or in fact had knowledge that he was in possession of this, but it's something that they can use in their consideration. . . .
 "[Defense counsel]: . . . I would still like to renew my objection as being prejudicial. You can't unring the bell they've already heard. They're painting a picture in their mind[s] based on this collateral evidence, which I understand why Your Honor is letting this in. But the defense objects to this being [ir]relevant and prejudicial.
"THE COURT: Overruled."
(R. 117-18.) (Emphasis added.)
McAdory then put on his defense. Rose Washington, a resident of the neighborhood for 25 to 30 years, and McAdory's aunt and next-door neighbor, testified that, on the date in question, McAdory and his cousin were standing on McAdory's porch. McAdory was preparing to go to the store. She testified that he had his keys and his food stamp card in his hand, and that he had never owned a coin purse. Ms. Washington testified that she saw the patrol car "whoop" around the curve in the street and that Officers Stanford and Hovies were the first officers she saw. She testified that there were four or five other policemen on the scene. She testified that Officers Stanford and Hovies "jumped out and grabbed" McAdory, and that his cousin went back toward the house, and then her telephone rang. Ms. Washington testified that McAdory never had a chance to run or throw anything. She testified that she went inside to answer the telephone, and, when she went back to see what was happening, the officers were talking to her sister. Ms. Washington testified that she understood that the officers were taking McAdory to jail "for warrants." (R. 130.) She also testified that McAdory asked her if she knew why the officers were arresting him.
Mary Spencer, Ms. Washington's sister and neighbor, and McAdory's across-the-street neighbor, testified that on the date in question she was sitting on her porch. McAdory was standing next to his car, preparing to go the store to get some ice. Ms. Spencer testified that he had his keys and his food stamp card in his hand, talking to his cousin. Ms. Spencer testified the, when the police arrived, "they turned the corner real fast and they stopped." (R. 145.) She testified that the officers jumped out of the car, grabbed McAdory, and pushed him up against the car. She testified that McAdory did not run or throw anything. Ms. Spencer testified that she went into her house to retrieve her "heavy housecoat" and went outside to ask the officers what was going on. She testified that McAdory never had a coin purse. Ms. Spencer testified that McAdory *Page 1034 
previously had had problems with the two arresting officers' following and pulling him over.
McAdory's cousin, Lee Otis Smith, also testified. He testified that he had been sitting on the porch with McAdory and decided to walk him to his car as he prepared to go to the store to get some ice. Smith remembered that McAdory had keys in his hand at the time. Smith testified that he had a cup of coffee in his hand, because he had just awakened, and that they were standing by the car when the "police rolled up" and told McAdory to get up against the car. (R. 160.) Smith testified that McAdory did not run and that he went into the house while the police dealt with McAdory. Smith testified that, at first, there were only two police officers, but five or six additional officers arrived later. Smith testified that he did not know why McAdory was arrested and that he did not see any drugs.
McAdory presented one more witness, his cousin, as a character witness. Then he rested his case. During the jury charge, the following exchange occurred:
 "[THE COURT]: Now ladies and gentlemen, during the trial we discussed or I mentioned briefly what's called collateral acts, or you may have heard the attorneys call it 404(b).
 "Some of the evidence that has been received in this case has been received for a limited purpose. And you should consider this evidence along with all of the other evidence material to the issues, but only for the limited purpose for which it was received.
 "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of the defendant in order to show action [in] conformity therewith, or to infer commission of the now-charged crime. You may not consider the evidence of other crimes, wrongs, acts, or convictions as substantive evidence that the defendant committed the charged offense.
 "However, it may be admissible for purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident.
 "In other words, ladies and gentlemen, I believe you had testimony as to two prior acts by this defendant. You may not use that testimony to show or to say that he is now guilty of this offense because of those prior acts on his part. You may not use those two prior acts to say he's guilty of this. You may use those prior occasions to go as proof of certain elements of the crime that I'm going to give you in just a second. And you will find that there's certain elements that the State must prove in the charge of the unlawful possession of a controlled substance. And that is that this defendant intended to possess the cocaine and that he knowingly possessed the cocaine. Those two prior occasions that you heard testified to, that is the limited reason that they have been testified to for your consideration as to whether or not they go to prove the element of intent or the element of knowledge.
"Does everyone understand that?
 "In other words, you can't say this man is guilty of the now-charged offense simply because of those two prior occasions. It's not for your purpose for that consideration. It is only for your consideration to go to the two elements that must be proved by the State.
"Does everyone understand that?
"I'm getting a lot of blank stares.
"JURY: We think so.
"THE COURT: We think so?" *Page 1035 
(R. 198-200.) (Emphasis added.) The trial court then continued charging the jury, moving on to McAdory's right not to testify. The jury returned a verdict of guilty.
 On Appeal
"The question of admissibility of evidence is generally left to the discretion of the trial court, and the trial court's determination on that question will not be reversed except upon a clear showing of abuse of discretion." Ex parte Loggins,771 So.2d 1093, 1103 (Ala. 2000). Rule 404(b), Ala. R. Evid., provides:
 "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial."
"For collateral-act evidence to be admissible for one of the `other purposes' in Rule 404(b), there must be `"a real and openissue as to one or more of those `other purposes.'"' Gillespiev. State, 549 So.2d 640, 645 (Ala.Crim.App. 1989), quotingBowden v. State, 538 So.2d 1226, 1227 (Ala. 1988)." Draper v.State, 886 So.2d 105, 117 (Ala.Crim.App. 2002) (emphasis added).See also Ex parte Baker, 780 So.2d 677, 679 (Ala. 2000) ("Collateral-act evidence is admissible to prove identity only
when the identity of the person who committed the charged offense is in issue and the charged offense is committed in a novel or peculiar manner.").
The record reveals that nowhere in this case was McAdory's knowledge — of any sort — or intent placed at issue. Neither his questioning during cross-examination nor the evidence presented during his defense indicates that knowledge or intent were real and open issues.[2] McAdory did not argue or attempt to prove that he did not know that the substance in the coin purse was crack cocaine,[3] nor did he argue or attempt to prove that he did not intend to possess the coin purse or the crack cocaine. Rather, the record indicates that McAdory's defense theory was that nothing occurred as attested to by the two arresting officers. He presented evidence that he had been targeted for arrest, rather than discovered standing in the middle of the street; that he had not been in possession of any drugs and had been lied to as to the purpose for his arrest; and that he had never had a coin purse. Additionally, McAdory attempted to discover and to introduce evidence to show a pattern and practice of harassment of residents in McAdory's neighborhood by these two officers. His efforts to do so were curtailed by adverse rulings from the trial court.
None of the permissible "other purposes" of Rule 404(b) qualify the highly prejudicial evidence of McAdory's two prior convictions for possession of drugs as admissible; none of the permissible "other purposes" were real and open issues. The evidence of McAdory's two prior convictions for drug possession served no purpose *Page 1036 
other than to prove that his actions in the present case were in conformity with his actions in the cases that resulted in his two previous convictions. Therefore, the trial court erred by allowing the admission of such evidence.
 "`Whether the improper admission of evidence of collateral bad acts amounts to prejudicial error or harmless error must be decided on the facts of the particular case.' R.D.H. v. State, 775 So.2d 248, 254 (Ala.Crim.App. 1997); Hobbs v. State, 669 So.2d 1030 (Ala.Crim.App. 1995). The standard for determining whether error is harmless is whether the evidence in error was `harmless beyond a reasonable doubt.' Schaut v. State, 551 So.2d 1135, 1137
(Ala.Crim.App. 1989), citing Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)."
Hunter v. State, 802 So.2d 265, 270 (Ala.Crim.App. 2000).
The unfair prejudice resulting from the admission of evidence of McAdory's two prior possession convictions was not cured by the trial court's limiting curative instructions to the jury that it was to consider the evidence only on the question of intent and knowledge. For the reasons stated above, the instruction was incorrect. A limiting curative instruction only mitigates the prejudicial admission of illegal evidence if the instruction is legally sound. The jury could not have considered the prior convictions for knowledge and intent because neither was at issue.
In Ex parte Casey, 889 So.2d 615 (Ala. 2004), Casey was found guilty of first and second-degree receiving stolen property. During the trial underlying these convictions, the trial court allowed the state to present evidence of convictions Casey received in 1995 for theft of property and unauthorized use of a credit card. The trial court allowed this evidence for the purpose of proving identity and criminal intent and knowledge. Even though the trial court gave a "limiting" instruction instructing the jurors not to consider the previous crimes as evidence that the Casey committed the crimes now charged, the Alabama Supreme Court found that this evidence violated the general exclusionary rule of Rule 404(b), Ala. R. Evid. The Alabama Supreme Court reasoned:
 "The record, which contains none of the factual specifics of the defendant's prior convictions, discloses no logical connection between his prior theft or his prior unauthorized use of a credit card and his knowledge of the presence, ownership, or stolen character of any of the items he was being tried for receiving in the case now before us. That is, the defendant's mere knowledge that the property he previously had been convicted of stealing or the credit card he had previously been convicted of using without authority belonged to some other persons would not, in the absence of some evidence of connecting facts, supply the defendant with knowledge of the presence, ownership, or stolen character of items found five years later in his girlfriend's apartment and car and would not enable him to differentiate between items there which were stolen and items there which were not stolen. In other words, the record reveals no identity or connection between what the defendant knew or learned in his prior crimes and what he knew or learned about the items in his girlfriend's apartment or car."
Ex parte Casey, 889 So.2d at 621.
The Alabama Supreme Court concluded that "[t]he only tendency of the defendant's prior convictions was the purpose prohibited by Rule 404(b), `to show action in conformity therewith' — that is, to show that, since the defendant dishonestly acquired property in 1995, he dishonestly *Page 1037 
acquired other property in 2000." Ex parte Casey, 889 So.2d at 622.
As in Casey, the evidence in this case was not "so innocuous or cumulative that it could not have contributed substantially to the adverse verdict, Ex parte Curtis, 502 So.2d 833 (Ala. 1986), and Ex parte Bush, 474 So.2d 168 (Ala. 1985)." Ex parteBaker, [Ms. 1000999, May 28, 2004] ___ So.2d ___ (Ala. 2004).
 "`[B]efore the reviewing court can affirm a judgment based upon the "harmless error" rule, that court must find conclusively that the trial court's error did not affect the outcome of the trial or otherwise prejudice a substantial right of the defendant.' Ex parte Crymes, 630 So.2d 125, 126 (Ala. 1993) (emphasis omitted [in Casey]). `"The basis for the [exclusionary] rule lies in the belief that the prejudicial effect of prior crimes will far outweigh any probative value that might be gained from them. Most agree that such evidence of prior crimes has almost an irreversible impact upon the minds of the jurors."' Ex parte Cofer, 440 So.2d 1121, 1123
(Ala. 1983), quoting C. Gamble, McElroy's Alabama Evidence § 69.01(1) (3d ed. 1977), also quoted in Hobbs v. State, 669 So.2d 1030, 1032 (Ala.Crim.App. 1995).
 "`The State has no absolute right to use evidence of prior acts to prove the elements of an offense or to buttress inferences created by other evidence. Evidence of prior bad acts of a criminal defendant is presumptively prejudicial to the defendant. It interjects a collateral issue into the case which may divert the minds of the jury from the main issue. Kilpatrick v. State, 51 Ala.App. 352, 285 So.2d 516
(1973), cert. denied, 291 Ala. 628, 285 So.2d 525
(1973). Therefore, the admission of such evidence constitutes reversible error. Hinton v. State, 280 Ala. 48, 189 So.2d 849 (1966).'
"Ex parte Cofer, 440 So.2d at 1124."
Ex parte Casey, 889 So.2d at 621-22 (emphasis added).
Although two police officers testified to the events in question, their accounts differed somewhat and were disputed. Three residents of the neighborhood testified that they witnessed the arrest; their versions of the events were quite different from the accounts of the officers, yet were similar to each other's. Additionally, there was some evidence indicating that these two officers had harassed McAdory in the past. Finally, the coin purse — the alleged cause for the stop by police — was not accounted for at trial. Although the officers testified that they put the coin purse back in McAdory's pocket, McAdory denied that he had ever owned a coin purse, and there was no record of it being inventoried at the jail.
We cannot say that the introduction of the evidence of McAdory's two prior convictions for possession of drugs was harmless beyond a reasonable doubt, particularly considering that the facts were strongly disputed and that the case depended heavily on witness credibility as perceived by the jury. Based on the foregoing, we conclude that evidence of McAdory's prior convictions for possession of drugs was prejudicial and its impact substantially outweighed any probative value, that the admission of the evidence constituted reversible error, and that McAdory is entitled to a new trial.
REVERSED AND REMANDED.
McMILLAN, P.J., concurs.
BASCHAB, J., concurs in the result, with opinion. SHAW and WISE, JJ., concur in the result.
[1] We recognize that the trial court did not impose the fine mandated by the Drug Demand Reduction Assessment Act, nor did it impose the additional assessment of $100 for the Alabama Forensic Sciences Trust Fund. We point this out in the event that McAdory is retried and convicted or pleads guilty on remand of this cause.
[2] Opening and closing arguments are not included in the record.
[3] An argument can also be made that his prior convictions prove "knowledge" in that they prove that he knew that the coin purse contained crack cocaine. *Page 1038