BOLIN, Justice.
R.C.W. was convicted of first-degree rape, see § 13A-6-61, Ala.Code 1975; incest, see § 13A-13-3, Ala.Code 1975; first-degree sexual abuse, see § 13A-6-66, Ala.Code 1975; and two counts of first-degree sodomy, see § 13A-6-63, Ala.Code 1975. The trial court sentenced R.C.W., pursuant to the Habitual Felony Offender Act, to life imprisonment on the incest and first-degree-sexual-abuse convictions and to life imprisonment without the possibility of parole on the first-degree-rape and both first-degree-sodomy convictions. The Court of Criminal Appeals reversed R.C.W.’s convictions in a 3 to 2 decision. R.C.W. v. State, 168 So.3d 90 (Ala.Crim.App.2012). The State of Alabama petitioned this Court for a writ of certiorari, which we granted. We now reverse and remand.

Facts and Procedural History

The Court of Criminal Appeals set forth the following relevant facts:
“At trial, T.W., R.C.W.’s biological daughter, testified that her earliest memory of sexual abuse involving her father occurred when she was 9 years old and in the fourth grade; T.W. stated that she was then 18 years old. T.W. stated that she was forced to perform oral sex on R.C.W. on several occasions. T.W. testified that on one occasion when she was 10 years old, R.C.W. forced her to have sexual intercourse with him. T.W. stated that on another occasion when she was 11 years old, R.C.W. performed oral sex on T.W. and had sexual intercourse with her. T.W. stated that when she was 13 years old, she informed her mother about the instances of sexual abuse, after which the sexual abuse stopped. Lastly, T.W. testified that she did not report any of these events to authorities but agreed to ‘all just be a family for my little brother and act like nothing ever happened.’
“Pa.W., T.W.’s mother, testified that she was married to R.C.W. at the time of trial, although divorce proceedings were pending. PaW. stated that she had a conversation with T.W. when T.W. was 12 or 13 years old regarding T.W.’s conduct; specifically, PaW. stated that T.W. had started acting distant and started locking her bedroom door. PaW. stated that after T.W. told her about the sexual abuse, she took T.W. to the gynecologist. PaW. stated that she thereafter confronted R.C.W. regarding the sexual abuse, at which time R.C.W. stated that he had ‘made some mistakes’ and that ‘[h]e was sorry’ and swore to her that ‘it would never happen again.’ PaW. testified that at a later date during a recorded telephone conversation, shé asked R.C.W. whether anything had happened between him and T.W. since PaW. had initially confronted him about the sexual abuse; PaW. testified that R.C.W. stated ‘[n]o, not one fucking *105 thing.’ Lastly, Pa.W. stated that a family conflict had begun after allegations had been made that T.W. was having a relationship with an older man when she was 15 years old.
“C.F., a former wife of R.C.W.’s, testified that while she was married to R.C.W., he was indicted and convicted for several sex offenses against her daughter M.W.T., R.C.W.’s biological daughter.
“P.W., who was 27 years old at the time she testified, stated that on one occasion when she was 10 years old, R.C.W., her biological father, came into her room after everyone in the house was asleep and touched her ‘[o]n my vagina and my butt.’ P.W. stated that on several occasions, R.C.W. ‘touched [her vagina] with his penis as well [as] his mouth’ and would force her to perform oral sex on him.
“M.W.T., who was 34 years old at the time of trial, testified that at a young age she was inappropriately touched by R.C.W. and that R.C.W. forced her to perform oral sex on him.
“Alex Bassinger, Susie Bassinger, Rhonda Gainey, Britney Booker, R.W., R.C.W.’s biological son, and G.S., R.C.W.’s brother, all testified that T.W. had a poor reputation for truthfulness. Susie Bassinger, Gainey, Booker, R.W., and G.S. all testified that T.W. appeared to have a good relationship with R.C.W.
[[Image here]]
“Before trial, the State filed notice of its intent to introduce Rule 404(b), Ala. R. Evid., evidence regarding the prior incidents of sexual abuse discussed above. R.C.W. argued that the evidence was too remote and was not necessary to the State’s case because, he said, motive, intent, and identity would not be contested at trial. Further, he argued that the prejudicial effect of the evidence outweighed its probative value. The State argued that the evidence was admissible pursuant to Rule 404(b), Ala. R. Evid., for the purposes of showing motive, opportunity, intent, or plan. The trial court denied R.C.W.’s motion in limine. Later, at the close of all the evidence, the following colloquy regarding jury charges ensued:
“ ‘[The court]: Okay. Let’s try this one. I did borrow some of yours and some of this is original. But I guess nothing is ever really original.
“ “You have heard testimony and evidence regarding other crimes — regarding crimes, wrongs, or bad acts regarding the defendant. The defendant is only on trial for the charges that I have read to you in the indictments, not for anything else. Evidence of crimes, wrongs, or bad acts was allowed in evidence not to prove the defendant is a bad person or a person of bad character because that would be wrong and impermissible or that it made him more likely to commit the crimes charged in these indictments because that would also be impermissible. The evidence of other acts, wrongs, or crimes was allowed into evidence for one narrow purpose only. That is, it may be considered by you only for the limited purpose as regarding the defendant’s motive, opportunity, intent or plan.
“ ‘[Prosecutor]: Perfect.
“ ‘[The court]: I know you don’t agree with the whole line.' But is that about as good as you think we can get it? I’m not asking you to agree with any of it but if you think of any other way to tweak it to make it any less—
“ ‘[Defense counsel]: Judge, the main question I would have, what was the purposes you said again?
*106 “ ‘[The court]: Motive, opportunity, intent or plan. And one of the reasons I had let it in all along is there’s one of the cases, and I thought I had it and maybe had it up here, is maybe it’s — and obviously don’t want to get into this, that — maybe the one you gave me, Nieki, that the Court then let it in, I think it was intent in order to show the jury that a defendant could in fact have a plan — intent or plan to have sex with girls of this age which a normal person would [find] unbelievable. I think it was intent. This may be it. Of course, it takes us back to another case, Ex parte Hatcher [, 646 So.2d 676 (Ala.1994) ]. But the Alabama Supreme Court stated in Ex parte Hatcher, 646 So.2d 676, testimony concerning the rape was relevant to the question of Hatcher’s motive which was a — which a reasonable person could find was an unnatural sexual desire for small children. And in this case, which was Worthy v. State, [724 So.2d 55 (Ala.Crim.App.1998),] the incidents testified [to] by appellant’s daughters were sufficiently similar to the present offense as they include evidence from which the jury could reasonably — the jury reasonably could conclude that the appellant was motivated by an unnatural desire for all three of his young female victims. So that’s kind of the kitchen sink on [Rule] 4040% Ala. R. Evid.]. I think when I get my grammar cleaned up I think that will kind of do it. We’ve got to take into account testimony related to the prior convictions. So I’ll get that cleaned up a bit.
“ ‘Let’s get to the rest of — Your sixteen, I think, is covered now....’
“The trial court thereafter charged the jury as follows, in pertinent part:
“‘You have heard testimony and evidence regarding crimes, wrongs or bad acts regarding the Defendant. The Defendant is on trial only for the criminal charges that I have read to you in the indictments, not for anything else. Evidence of other crimes, wrongs, or bad acts was allowed into evidence not to prove that the Defendant may or may not be a bad person or may or may not be a person of bad character or that it made him more likely to commit the crimes charged in these indictments, because that would be wrong and legally impermissible. The evidence of other crimes, wrongs or bad acts was allowed into evidence for one narrow purpose only. That is, it may be considered by you for the limited purpose as regarding the Defendant’s motive, opportunity, intent, or plan.’
“Before the case was submitted to the jury, defense counsel objected to the charge and stated:
“ ‘Judge, with regard to the charge on [Rule] 404(b) evidence. The portion where you said that it’s for the limited purpose of motive, opportunity, or plan, I would submit that those are not matters in controversy and by having it go — I believe that that is different than what the State had said originally, was their purpose for offering that evidence. We except and object to the Court giving it with that broad of reason for it coming in.’ ”
R.C.W., 168 So.3d at 91-94 (references to record omitted).
R.C.W. argued on appeal that the trial court’s admission of the State’s evidence of the collateral bad acts was reversible error because, he said, the purposes for which the State offered the collateral-bad-acts evidence “were never placed in issue by [R.C.W.] at trial.” See Draper v. State, 886 So.2d 105, 117 (Ala.Crim.App.2002) *107 (noting that, for collateral-bad-acts evidence to be admissible for one of the “other purposes” in Rule 404(b), Ala. R. Evid., there must be a “real and open issue as to one or more of those ‘other purposes.’ ” (some internal quotation marks omitted)).
The State argued that the collateral evidence of sexual misconduct involving T.W.’s half sisters was admissible for the purpose of showing motive. The State further argued that “ ‘ “[t]he fact that the prosecutor gave an erroneous reason in arguing for the admissibility of the evidence is unimportant when there is, in fact, a valid reason for admissibility.”’” R.C.W., 168 So.3d at 94 (quoting the State’s brief, quoting in turn Ex parte Register, 680 So.2d 225, 226 (Ala.1994)).
The Court of Criminal Appeals concluded that the collateral evidence of R.C.W.’s sexual misconduct involving T.W.’s half sisters was admissible to establish motive, i.e., “in order to establish R.C.W.’s ‘unnatural sexual desire for the small children living in his household’ as a motive for the present offense” with which he had been charged. R.C.W., 168 So.3d at 97 (quoting Hatcher v. State, 646 So.2d 676, 679 (Ala.1994)). However, the Court of Criminal Appeals also concluded that “it was reversible error for the trial court to allow the jury to consider the evidence of collateral sexual misconduct involving T.W.’s half sisters for the improper purposes of intent, opportunity, and plan,” where intent, opportunity, or plan was not at issue in R.C.W.’s trial, R.C.W., 168 So.3d at 97, because a “jury may not consider evidence of collateral sexual misconduct for an implausible purpose.” R.C.W., 168 So.3d at 94. Specifically, the Court of Criminal Appeals stated:
“In Marks [v. State, 94 So.3d 409 (Ala.Crim.App.2012) ], we held:
“ ‘The circuit court’s instructions in this case permitted the jury to consider the collateral-act evidence for the purposes of showing motive, opportunity, plan, knowledge, and modus op-erandi. On appeal, the State argues that opportunity and plan were at issue and that, therefore, the circuit court properly instructed the jury as to those purposes. The State also argues that the evidence was admissible to prove identity and preparation — purposes for which the jury was not instructed regarding the collateral-act evidence. The State does not address the additional purposes — motive, knowledge, or modus operandi— on which the jury was instructed it could consider the collateral-act evidence in this case.
“ ‘Although not as broad as the instructions at issue in Ex parte Billups, [86 So.3d 1079 (Ala.2010),] the instruction in this case regarding the permissible use of the collateral-act evidence was too general and authorized the jury to consider the evidence for “implausible purposes,” such as identity. For example, I.C. identified Marks, and Marks admitted that he knew I.C.; he denied, however, that he had had sex with I.C. or that he had raped her. Thus, I.C.’s and Marks’s credibility, not Marks’s identity, were at issue. Compare Gibson v. State, 677 So.2d 238, 240 (Ala.Crim.App.1995) (identity was at issue where the accused contended that someone else committed the sexual offenses with which he was charged), with Mothershed v. State, 596 So.2d 47 (Ala.Crim.App.1991) (evidence of collateral sexual acts of the accused against the alleged victims was inadmissible to prove identity where the accused denied committing the offenses with which he was charged and he did not allege that the crimes were *108 committed by someone else). Thus, the circuit court’s instructions were erroneous because they permitted the jury, over Marks’s objection, to consider the collateral-act evidence for purposes not at issue in the case. Given the graphic nature of the collateral-act evidence at issue here, the “confusion of the jury and the probable prejudice to [Marks,]” as a result of the erroneous instruction “is obvious.” Ex parte Billups, 86 So.3d at 1086 (quoting Billups v. State, 86 So.3d 1032, 1079 (Ala.Crim.App.2009) (Welch, J., dissenting)). Thus, in accordance with the Supreme Court’s decision in Billups, the jury instructions in this case constituted reversible error.
“ ‘For the above-stated reasons, Marks’s conviction for rape in the first degree is hereby reversed and this case is remanded to the Mobile Circuit Court for proceedings consistent with this opinion.’
“94 So.3d at 413-14.
“Here, as in Marks, the trial court’s instructions permitted the jury to consider the collateral-act evidence for purposes not at issue in this case. The trial court instructed the jury as to the purposes of motive, opportunity, intent, and plan. Although the State addresses motive, the State does not address the additional purposes — intent, opportunity, and plan — for which the jury was instructed it could consider the evidence of collateral sexual misconduct.
“ ‘Thus, the circuit court’s instructions were erroneous because they permitted the jury, over [R.C.W.J’s objection, to consider the collateral-act evidence for purposes not at issue in the case. Given the graphic nature of the collateral-act evidence at issue here, the “confusion of the jury and the probable prejudice to [R.C.W.,]” as a result of the erroneous instruction “is obvious.” Ex parte Billups, 86 So.3d at 1086 (quoting Billups v. State, 86 So.3d 1032, 1079 (Ala.Crim.App.2009) (Welch, J., dissenting)). Thus, in accordance with the Supreme Court’s decision in Billups, the jury instructions in this case constituted reversible error.’
“Marks, 94 So.3d at 413-14.”
R.C.W., 168 So.3d at 97-98 (footnote omitted).
Presiding Judge Windom, in her dissenting opinion, agreed with the holding of the main opinion that evidence of R.C.W.’s pri- or sexual abuse of his other daughters was admissible to establish a motive for raping, sodomizing, and sexually abusing T.W. R.C.W., 168 So.3d at 99. Presiding Judge Windom also agreed with the conclusion in the main opinion that the trial court’s limiting instruction to the jury erroneously allowed the jury to consider evidence of R.C.W.⅛ sexual abuse of his other daughters for purposes other than to show motive, i.e., for “ ‘the improper purposes of intent, opportunity, and plan.’ ” R.C.W., 168 So.3d at 99 (Windom, P.J., dissenting). However, Presiding Judge Windom concluded that R.C.W. suffered no harm as the result of the trial court’s erroneous jury instruction, which allowed the jury to consider evidence of R.C.W.’s sexual abuse of his other daughters for purposes of intent, opportunity, and plan. Specifically, Presiding Judge Windom explained:
“In Ex parte Billups, 86 So.3d [1079] at 1084-85 [ (Ala.2010) ], the Alabama Supreme Court held that when evidence of collateral bad acts is admitted for one or more purposes other than to show bad character, the circuit court’s failure to give an instruction that limits the jury’s consideration of that evidence to only the purpose for which it was admit *109 ted constitutes error. Specifically, the Court held that the circuit court’s limiting instruction relating to Rule 404(b) evidence that ‘simply recit[ed] the complete “laundry list” of permissible theories under Rule 404(b) [for the admission of collateral-bad-act evidence], ... gave the jury inadequate guidance [and constituted error].’ Billups, 86 So.3d at 1086.
“The Supreme Court did not, however, create a per se rule requiring reversal every time a circuit court’s limiting instruction relating to collateral bad acts includes purposes listed in Rule 404(b) for which the evidence was not admitted. To the contrary, the Supreme Court has repeatedly held that the failure to give a limiting instruction and/or the giving of an erroneous limiting instruction must be reviewed on a case-by-case basis. Snyder v. State, 893 So.2d 482, 485 (Ala.2001) (explaining that ‘each inquiry regarding the propriety of an instruction on the use of evidence of prior convictions ... must be determined on a case-by-case basis’); Ex parte Martin, 931 So.2d 759, 768 (Ala.2004) (same); Johnson v. State, 120 So.3d 1119, 1128 (Ala.2006) (same).
[[Image here]]
“Although evidence of R.C.W.’s collateral bad acts was properly admitted as substantive evidence to show his motive and although the circuit court correctly prohibited the jury from considering R.C.W.’s collateral bad acts as evidence of his bad character, the majority finds reversible error in the circuit court’s limiting instruction because it allowed the jury to consider that evidence for the ‘improper purposes of [establishing] intent, opportunity, and plan[, points that were] not at issue in this case.’ 168 So.3d 97, 98. I, however, disagree. Because it was not plausible for evidence of R.C.W.’s collateral bad acts to establish his intent, opportunity, or plan, any error in allowing the jury to consider the evidence for those purposes was harmless. In United States v. Levy-Cordero, 67 F.3d 1002, 1011 (1st Cir.1995), the government offered evidence of the appellant’s collateral bad acts to establish his consciousness of guilt. The trial court, however, gave a limiting instruction that directed the jury to consider the collateral-bad-act evidence for the purpose of establishing the appellant’s intent and knowledge. Id. The United States Court of Appeals for the First Circuit held that a trial court’s limiting instruction relating to the Rule 404(b) evidence improperly allowed the jury to consider the appellant’s collateral bad acts as evidence of his intent and knowledge because those were not reasons that the evidence was admitted. Although the trial court improperly instructed the jury that it could consider the appellant’s collateral bad acts for intent and knowledge, the First Circuit held that the error was harmless. Id. The Court explained that the erroneous instruction was harmless because there was ‘no logical reason why [the collateral bad acts] would demonstrate appellant’s intent or knowledge with respect to [charged] offenses.... ’ Id. Thus, the circuit court’s instruction was harmless because it ‘instructed the jury that it could draw an inference that the evidence could not logically support.’ Id.
“In this case, the circuit court’s instruction that allowed the jury to consider R.C.W.’s sexual misconduct for ‘improper purposes of [establishing] intent, opportunity, and plan,’ 168 So.3d at 97, was harmless because there was ‘no logical reason why [the collateral bad acts] would demonstrate appellant’s intent[, plan, or opportunity] with respect to [charged] offenses.... ’ Levy-Cordero, *110 67 F.3d at 1011. Stated differently, R.C.W.’s collateral sexual misconduct did not establish his specific intent to commit, his opportunity to commit, or a plan to commit the charged offenses. Therefore, the circuit court’s erroneous limiting instruction was harmless because it merely allowed the jury to ‘draw an inference that the evidence could not logically support.’ Id.
“Additionally, as the majority explains, R.C.W.’s intent, opportunity, and plan were not at issue at trial. R.C.W. was T.W.’s father, and they lived together at the time of the offenses. From this evidence, the jury must have drawn the conclusion that R.C.W., who was living with his daughter, had the opportunity to rape, sodomize, and sexually abuse her. Because R.C.W.’s opportunity to commit the charged offenses was clearly established at trial, the circuit court’s instruction that allowed the jury to consider R.C.W.’s collateral bad acts for the purpose of establishing opportunity was harmless. Cf. Dawson v. State, 675 So.2d 897, 900 (Ala.Crim.App.1995) (‘The erroneous admission of evidence that is merely cumulative is harmless.’ (citing Reese v. City of Dothan, 642 So.2d 511, 515 (Ala.Crim.App.1993))); Woods v. State, 13 So.3d 1, 23 (Ala.Crim.App.2007). Likewise, as the majority states, ‘[t]he intent necessary to these types of crimes may be inferred by the jury from the acts themselves.’ 168 So.3d at 95. Because R.C.W.’s general intent was established by the acts themselves, the circuit court’s instruction allowing the jury to consider additional evidence of intent was harmless. Cf. Dawson, 675 So.2d at 900; Woods, 13 So.3d at 23. Finally, as the majority states, R.C.W.’s identity was not at issue in this case because R.C.W. did not allege that someone else committed the crime. Because R.C.W. did not place his identity at issue, the jury had two choices: believe that R.C.W. committed the acts or believe that no acts occurred. Because R.C.W.’s identity was not at issue and the jury was left to decide only whether the acts occurred, allowing the jury to consider evidence to show a plan and thus R.C.W.’s identity was not harmful. Id.
“This is not a case in which evidence of collateral bad acts was improperly admitted or in which the circuit court erroneously allowed the jury to consider that evidence to show bad character. Instead, evidence of R.C.W.’s collateral sexual acts was properly admitted and considered as substantive evidence of his motive, and the circuit court correctly prevented the jury from considering that evidence for the sole purpose for which it is not allowed — bad character and action in conformity therewith. Because evidence of R.C.W.’s collateral sexual misconduct was properly considered by the jury as substantive evidence of motive and because the circuit court prevented the jury from considering the evidence to prove bad character, the circuit court’s limiting instruction that allowed the jury to also consider that evidence for additional implausible and/or irrelevant purposes was harmless. Therefore, I respectfully dissent.”
R.C.W., 168 So.3d at 100-102 (Windom, P.J., dissenting).
We granted the State’s petition for a writ of certiorari to determine, as a matter of first impression, whether an erroneous limiting instruction, as to otherwise properly admitted Rule 404(b) collateral-acts evidence, is subject to a harmless-error analysis.

Standard of Review

“ ‘This Court reviews pure. questions of law in criminal cases de novo.’ ” *111 Ex parte Morrow, 915 So.2d 539, 541 (Ala.2004) (quoting Ex parte Key, 890 So.2d 1056, 1059 (Ala.2003)).

Discussion

The State argues to this Court that the collateral evidence of R.C.W.’s sexual misconduct involving T.W.’s half sisters was properly admitted and considered as substantive evidence of his motive. The State concedes that the trial court’s limiting instruction to the jury was broader than necessary because it erroneously allowed the jury to consider evidence of R.C.W.’s sexual abuse of his other daughters for purposes other than to show motive, i.e., for the improper purposes of showing intent, opportunity, and plan. However, the State argues that the trial court’s erroneous limiting instruction was harmless because, it says, although the erroneous limiting instruction was overly broad, it did in fact properly limit the jury’s consideration of the collateral sexual-misconduct evidence to the permissible purpose of showing motive and properly prevented the jury from considering the evidence for the impermissible purpose of showing the defendant’s bad character.
R.C.W. argues that the decision of the Court of Criminal Appeals properly followed this Court’s decision in Ex parte Billups, 86 So.3d 1079 (Ala.2010), a decision he says is “on point” with the case presently before this Court.
Rule 404(b), Ala. R. Evid., provides:
“Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident....”
Rule 404(b) has been explained as follows:
“ ‘The Alabama Supreme Court has “held that the exclusionary rule prevents the State from using evidence of a defendant’s prior bad acts to prove the defendant’s bad character and, thereby, protects the defendant’s right to a fair trial.” Ex parte Drinkard, 777 So.2d 295, 302 (Ala.2000) (citing Ex parte Cofer, 440 So.2d 1121, 1123 (Ala.1983)). This court has explained that “[o]n the trial for the alleged commission of a particular crime, evidence of the accused’s having committed another act or crime is not admissible if the only probative function of such evidence is to prove bad character and the accused’s conformity therewith.” Lewis v. State, 889 So.2d 623, 661 (Ala.Crim.App.2003) (quoting C. Gamble, McElroy’s Alabama Evidence § 69.01(1) (5th ed.1996)).
“ ““ “This exclusionary rule is simply an application of the character rule which forbids the State to prove the accused’s bad character by particular deeds. The basis for the rule lies in the belief that the prejudicial effect of prior crimes will far outweigh any probative value that might be gained from them. Most agree that such evidence of prior crimes has almost an irreversible impact upon the minds of the jurors.” ’ ”
“ Ex parte Jackson, 33 So.3d 1279, 1284-85 (Ala.2009) (quoting Ex parte Arthur, 472 So.2d 665, 668 (Ala.1985), quoting in turn C. Gamble, McElroy’s supra, § 69.01(1)).’
“[Moore v. State,] 49 So.3d [228] at 232 [ (Ala.Crim.App.2009) ] (emphasis added).” .
Ex parte Billups, 86 So.3d at 1084. Further,
*112 “ ‘ “Rule 404(b) is a principle of limited admissibility. This means that the offered evidence is inadmissible for one broad, impermissible purpose, but is admissible for one or more other limited purposes Taylor v. State, 808 So.2d 1148, 1165 (Ala.Crim.App.2000) (quoting C. Gamble, McElroy’s Alabama Evidence § 69.01(1) (5th ed.1996) (emphasis added)).
[[Image here]]
“In Huddleston v. United States, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988), the United States Supreme Court stated that, when evidence of a defendant’s other crimes, wrongs, or acts is introduced under Rule 404(b), Fed.R.Evid., ‘the trial court shall, upon request, instruct the jury that the similar acts evidence is to be considered only for the proper purpose for which it was admitted.’ 485 U.S. at 691-92, 108 S.Ct. 1496 (citing United States v. Ingraham, 832 F.2d 229, 235 (1st Cir.1987) (emphasis added))....
[[Image here]]
“‘[A]n instruction should advise the jury on the purposes for which prior acts are admitted, meaning uses that are plausible in the case at hand, and should not include a laundry list of every conceivable use;’ 1 Christopher B. Mueller and Laird C. Kirkpatrick, Federal Evidence § 4:80 at 789 (3d ed.2007).”
Ex parte Billups, 86 So.3d at 1084-86.
In Ex parte Billups, the defendant was indicted in October 2004 on 13 counts of capital murder in relation to the killing of 4 men at the Avanti East Apartments in Birmingham. In June 2005, the defendant was indicted for the murder of Stevon Lockett. In November 2005, the defendant was convicted of 13 counts of capital murder in connection with the Avanti East killings. The trial court sentenced the defendant to death.
In December 2005, before the defendant was tried for Lockett’s murder, the State gave the defense notice of its intent to present evidence regarding the defendant’s involvement in the Avanti East killings during his trial for the murder of Lockett. The trial court, over the defendant’s objection, determined that the evidence regarding the defendant’s involvement in the Avanti East killings was admissible “ ‘based upon the close proximity, the fact that the same weapon was used, and the fact that [the offenses] [were] very similar.’ ” Ex parte Billups, 86 So.3d at 1081.
At trial, the State presented an overwhelming amount of evidence relating to the defendant’s involvement in the Avanti East killings. The evidence presented by the State consisted of eyewitness testimony of the Avanti East killings by two witnesses; testimony of forensic experts, a firearms expert, and a detective; and photographic evidence demonstrating the victims’ wounds. The State first mentioned evidence relating to the defendant’s involvement in the Avanti East killings in its opening statement, during which the State provided the jury with a detailed account of those killings and displayed postmortem photographs of the four victims of the Avanti East killings. During its case-in-chief, the State called seven witnesses who testified regarding the Avanti East killings. During its cross-examination of the defendant, the State asked several questions regarding his involvement in the Avanti East killings. The State also introduced during its cross-examination of the defendant the postmortem photographs of the victims of the Avanti East killings that it had displayed during the opening statement. Finally, the State made numerous references to the Avanti East killings in its closing argument. The defendant objected on several occasions to the introduction of *113 the evidence relating to his involvement in the Avanti East killings, arguing, among other things, that the evidence was inadmissible because it was unnecessary and prejudicial.
The trial court instructed the jury as follows regarding its consideration of the evidence of the defendant’s involvement in the Avanti East killings:
“ ‘Ladies and gentlemen, let me tell you one thing about this testimony. You’re hearing testimony today about another incident that allegedly occurred, not the same one that [the defendant] is actually charged with in this case.
“ ‘The law is clear that evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action and conformity therewith. In other words, evidence of other crimes allegedly committed by the defendant cannot be used to show bad character.
“ ‘The evidence being presented regarding other acts allegedly committed by the defendant can be considered by you only for the purpose of determining either motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
“ ‘I’m going to repeat those for you. But if you think the evidence from the other case is relevant to the issues of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident in Stevon Lockett’s death, then you can consider this evidence.
“ ‘But it cannot be used by you for any other purpose; all right?’ ”
Ex parte Billups, 86 So.3d at 1082. Further, the trial court stated the following in its final instructions to the jury:
“ ‘Now, as I instructed you during the trial, there’s been some testimony regarding an allegation of other crimes. Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action and conformity therewith. In other words, evidence of the other crimes allegedly committed by the defendant cannot be used to show bad character. It cannot be used to show bad character. The evidence being presented regarding other acts allegedly committed by the defendant can be considered by you only for the purpose of determining motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, as I have instructed you. If you think the evidence from the other case is relevant to the issues of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident in Stevon Lockett’s death, then you can consider it. But it cannot be used by you for any other purpose.’ ”
Ex parte Billups, 86 So.3d at 1082.
The Court of Criminal Appeals concluded that the trial court did not err in admitting the collateral-acts evidence regarding the defendant’s involvement in the Avanti East killings, stating, in relevant part, that that evidence “was relevant to establish [the defendant’s] identity, intent, pattern or plan.” Billups v. State, 86 So.3d 1032, 1053 (Ala.Crim.App.2009). As to the trial court’s limiting instruction regarding the collateral-acts evidence, the Court of Criminal Appeals noted that “the trial court repeatedly instructed the jury as to the limited purpose for which evidence about the [Avanti East] killings ... was being admitted” and that the trial court “specifically instructed the jury that it could not use the collateral bad act evidence to show [the defendant’s] bad character or to show that he acted in conformity therewith.” Billups, 86 So.3d at 1053.
*114 Judge Welch authored a vigorous dissent, concluding that, although the collateral-acts evidence relating to the Avanti East killings might have been admissible to show motive, it was not reasonably necessary to prove motive and that the prejudicial impact of the substantial evidence and argument relating to the Avanti East killings so outweighed its probative value that the motive exception did not justify its admission into evidence. Billups, 86 So.3d at 1073. Specifically, Judge Welch stated:
“The record in this case presents a textbook example of the reason the exclusionary rule prohibiting collateral-act evidence was created; the extensive evidence of collateral acts in [the defendant’s] trial for the murder of Lockett permitted this trial to become, for all intents and purposes, a trial for murders of the four Hispanic men as well. The inadmissible collateral evidence diverted the jurors’ minds from the main issue of [the defendant’s] criminal responsibility for Lockett’s death and had an irreversible impact on the jury’s decision-making process in this case....
[[Image here]]
“In addition to the fact that the evidence about the quadruple murders was unnecessary to the State’s case, the evidence was overwhelmingly and unduly prejudicial to [the defendant]. The State presented such substantial evidence and argument about the quadruple-murder case, beginning in its opening argument to the jury when it displayed photographs of the four victims, that the record reads almost as if [the defendant] were being tried for both crimes in this trial. There was no way the jury could have excluded consideration of the significant and detailed collateral evidence as impermissible character evidence and there was a substantial danger that the jury would have made an impermissible inference, based on the collateral evidence, that [the defendant] was a depraved massacring killer so he probably killed Lockett, too. Allowing the jury to hear the collateral evidence was far more prejudicial than probative of the issues the majority contends it was admissible to prove.”
Billups, 86 So.3d at 1072-77. Additionally, Judge Welch concluded that the trial court did not properly instruct the jury as to the purposes for which it could consider the collateral-acts evidence of the defendant’s involvement in the Avanti East killings and that the erroneous limiting instruction actually served to exacerbate the error caused by admitting the collateral-acts evidence. Judge Welch stated:
“[Although the majority has correctly stated that the trial court did issue ‘limiting’ instructions, those instructions were wrong as a matter of law. The trial court accepted the State’s invitation at trial to instruct the jury that it could use the collateral-act evidence for any of the reasons listed in Rule 404(b), [Ala. R. Evid.,] even though the State never argued that the evidence was admissible for most of those purposes. The State never argued that evidence about the [Avanti East killings] fell within the exceptions in the exclusionary rule for evidence related to opportunity, preparation, knowledge, or absence of mistake or accident. Thus, the trial court, by issuing its erroneous instructions, greatly enhanced the prejudice caused when evidence about the [Avanti East killings] was admitted because the erroneous instructions permitted the jury to consider the illegal evidence for many issues other than those for which it was purportedly admitted.
“This Court considered a similar issue in McAdory v. State, 895 So.2d 1029 (Ala.Crim.App.2004), when the trial *115 court incorrectly instructed the jury about the issues relative to which evidence of the defendant’s prior crimes could be considered. The Court stated: ‘A limiting curative instruction only mitigates the prejudicial admission of illegal evidence if the instruction is legally sound. The jury could not have considered the prior convictions for knowledge and intent because neither was at issue.’ 895 So.2d at 1036. Thus, not only was substantial, prejudicial evidence about the quadruple murders erroneously admitted, but the jury also received misleading instructions that permitted it to consider that prejudicial evidence for issues far beyond those for which the evidence was initially admitted. The confusion of the jury and the probable prejudice to [the defendant] is obvious and exacerbated the devastating harm that resulted from the erroneous admission of the testimony. Although defense counsel did not object to the instructions, based on the record as a whole, I believe that the error affectedv[the defendant’s] substantial rights and that it seriously affected the fairness and integrity of the proceeding against him.... ”
Billups, 86 So.3d at 1078-79.
The defendant argued to this Court that the trial court committed reversible error in instructing the jury as to the purposes for which it could consider the collateral-acts evidence because the trial court’s limiting instruction allowed the jury to consider the collateral-acts evidence for issues or purposes not in dispute. In reversing the decision of the Court of Criminal Appeals, this Court stated:
“Assuming, without deciding, that the evidence regarding [the defendant’s] involvement in the Avanti East killings was, as the State contends, relevant to show plan, identity, motive, and intent, the jury, pursuant to the trial court’s broad instruction, nonetheless remained free to consider that evidence for numerous other purposes (including opportunity, preparation, knowledge, or absence of mistake or accident) that were indisputably not at issue in this case. See McAdory v. State, 895 So.2d 1029, 1036 (Ala.Crim.App.2004) (plurality opinion) (concluding that the jury could not have properly considered the defendant’s prior convictions to show knowledge and intent because neither was at issue). Presenting the jury with such a far-reaching ‘limiting’ instruction carries with it the same problems as providing the jury with no specific purpose for considering the other crimes, wrongs, or acts evidence.
“ ‘[A]n instruction should advise the jury on the purposes for which prior acts are admitted, meaning uses that are plausible in the case at hand, and should not include a laundry list of every conceivable use.’ 1 Christopher B. Mueller and Laird C. Kirkpatrick, Federal Evidence § 4:30 at 789 (3d ed.2007) (emphasis added). In this case, however, the jury was allowed to consider the evidence regarding [the defendant’s] involvement in the Avanti East killings for several implausible purposes, including, among others, opportunity and absence of mistake or accident. For example, [the defendant] made no argument at trial that Lockett’s killing was the result of an accident or that he lacked the opportunity to kill Lockett; rather, [the defendant’s] defense was that another person, Charles Cooper, was responsible for Lockett’s murder.
“By simply reciting the complete ‘laundry list’ of permissible theories under Rule 404(b), the trial court’s instruction in this case gave the jury inadequate guidance. See Ex parte Belisle, 11 So.3d 323, 333 (Ala.2008) (‘[A]n appellate court “presume[s] that the jury fol *116 lows the trial court’s instructions unless there is evidence to the contrary.” ’ (quoting Cochran v. Ward, 935 So.2d 1169, 1176 (Ala.2006))). The trial court’s instruction also failed to limit the State to the purposes — as nonspecific as they were — that it advanced in support of admission of the evidence regarding [the defendant’s] involvement in the Avanti East killings. Thus, we conclude that the trial court erred by failing to limit the jury’s consideration of that evidence to only those purposes for which the evidence was purportedly offered by the State (plan, identity, motive, and intent). See Huddleston [v. United States, 485 U.S. 681 (1988) ]; cf. United States v. Tse, 375 F.3d 148, 158 (1st Cir.2004) (finding that the district court ‘adequately limited the jury’s consideration of [certain Rule 404(b) ] evidence’ when the court instructed the jury that it could not use that evidence ‘to make a propensity inference’ and that the jury could use that evidence to determine only the defendant’s ‘knowledge and intent’).
“With regard to the erroneous jury instruction, we agree with Judge Welch’s conclusions that ‘[t]he confusion of the jury and the probable prejudice to [the defendant] is obvious’ and that ‘the error affected [the defendant’s] .substantial rights and ... seriously affected the fairness and integrity of the proceeding against him.’ Billups, 86 So.3d at 1079 (Welch, J., dissenting). Accordingly, we conclude that, under the particular circumstances of this case, the trial court’s failure to properly instruct the jury regarding the purposes for which it could consider the evidence of [the defendant’s] involvement in the Avanti East killings constituted plain error.”
Ex parte Billups, 86 So.3d at 1085-86.
Although not expressly stated in this Court’s main opinion in Ex parte Billups, Judge Welch’s dissent in Billups, with which this Court expressly agreed, was based on two independent conclusions. First and foremost, Judge Welch determined that a substantial amount of prejudicial evidence relating to the defendant’s involvement in the Avanti East killings had been erroneously admitted at trial. As Judge Welch stated in Billups: “The record in this case presents a textbook example of the reason the exclusionary rule prohibiting collateral-act evidence was created; the extensive evidence of collateral acts in [the defendant’s] trial for the murder of Lockett permitted this trial to become, for all intents and purposes, a trial for murders of the four Hispanic men as well.” 86 So.3d at 1072 (emphasis added). Second, Judge Welch determined that the overly broad limiting instruction that permitted the jury to consider the collateral-acts evidence for issues beyond those for which the evidence was initially admitted resulted in obvious confusion to the jury and probable prejudice that only exacerbated the already prejudicial effect of the erroneously admitted collateral-acts evidence. Billups, supra. In other words, Judge Welch determined that the already overwhelming amount of prejudicial evidence admitted became even more prejudicial when considered in context with the overly broad limiting instruction, which allowed the jury to consider the prejudicial evidence for many purposes other than those for which it was purportedly admitted. Given the sheer volume of prejudicial evidence admitted in Billups, the overly broad instruction given to the jury in that case regarding the purposes for which that evidence could be considered, including matters beyond those for which the evidence was initially admitted, certainly was prejudicial because the limiting instruction gave the jury little guidance and no limitations as to the proper purposes for which the jury could consider the collateral-acts *117 evidence. See Ex parte Billups, 86 So.3d at 1086 (stating that “[presenting the jury with such a far-reaching ‘limiting’ instruction carries with it the same problems as providing the jury with no specific purpose for considering the other crimes, wrongs, or acts evidence” and that, “[b]y simply reciting the complete ‘laundry list’ of permissible theories under Rule 404(b), the trial court’s instruction in this case gave the jury inadequate guidance”). Thus, Ex parte Billups can be read as standing for the proposition that an improper limiting instruction is prejudicial if, in effect, it offers little guidance or no limitations to the jury as to the proper purpose or purposes for which the collateral-act evidence could be considered.
To be sure, the factual scenario present in Ex parte Billups is extreme, given the voluminous amount of prejudicial collateral-acts evidence admitted at trial coupled with an overly broad limiting instruction in which the trial court simply listed each possible exception to Rule 404(b). For that reason, the holding in Ex parte Bill-ups is limited to a similar factual scenario and does not “create a per se rule requiring reversal every time a circuit court’s limiting instruction relating to collateral bad acts includes purposes listed in Rule 404(b) for which the evidence was not admitted.” R.C.W., 168 So.3d at 100 (Windam, P.J., dissenting).
In the present case, the State presented the limited testimony of R.C.W.’s two other biological daughters regarding similar acts of sexual abuse perpetrated upon them by R.C.W. This evidence was necessary to the State’s case to establish motive, i.e., “to establish R.C.W.’s ‘unnatural sexual desire for the small children living in his household’ as a motive for the present offense.” R.C.W., 168 So.3d at 97. Additionally, this evidence, although obviously prejudicial to R.C.W., was not so potentially prejudicial as to outweigh its probative value. See Irvin v. State, 940 So.2d 331, 346 (Ala.Crim.App.2005). Thus, we aghee with the Court of Criminal Appeals’ conclusion that the collateral-acts evidence in this case was properly admitted to show motive.
We further agree with the Court of Criminal Appeals’ conclusion that the trial court’s limiting instruction in this case was erroneous because it permitted the jury to consider the collateral-acts evidence for purposes not at issue in this particular case, i.e., to show “opportunity, intent, or plan.” See Ex parte Billups, supra. However, for the reasons explained below, we conclude that the erroneous limiting instruction was harmless error.
Initially, we note that, unlike the situation in Ex parte Billups, the potential prejudicial effect resulting in this case from the admission of the evidence of R.C.W.’s prior sexual misconduct with his other daughters, coupled with the erroneous limiting instruction given by the trial court, was muted because of the limited amount of collateral-acts evidence admitted at trial. Here, the collateral-acts evidence was properly admissible to .show motive and was limited to the testimony of R.C.W.’s other two biological daughters, who testified to specific instances of similar sexual misconduct as alleged in this case. Furthermore, although the limiting instruction in this case erroneously allowed the jury to consider the collateral-acts evidence for issues not in. dispute, the limiting instruction properly instructed the jury that it could consider the collateral-acts evidence for the purpose of motive and that it could not consider the evidence to show R.C.W.’s bad character and that he acted in conformity with that character. To the extent the trial court’s limiting instruction allowed the jury to consider the collateral-acts evidence for issues not in *118 dispute, we agree with Presiding Judge Windom’s conclusion that “[b]ecause it was not plausible for evidence of R.C.W.’s collateral bad acts to establish his intent, opportunity, or plan, any error in allowing the jury to consider the evidence for those purposes was harmless.” R.C.W., 168 So.3d at 101 (Windom, P.J., dissenting). As set forth earlier, Presiding Judge Windom aptly explained:
“In this case, the circuit court’s instruction that allowed the jury to consider R.C.W.’s sexual misconduct for ‘improper purposes of [establishing] intent, opportunity, and plan,’ 168 So.3d at 97, was harmless because there was ‘no logical reason why [the collateral bad acts] would demonstrate appellant’s intentf, plan, or opportunity] with respect to [charged] offenses.... ’ Levy-Cordero, 67 F.3d at 1011. Stated differently, R.C.W.’s collateral sexual misconduct did not establish his specific intent to commit, his opportunity to commit, or a plan to commit the charged offenses. Therefore, the circuit court’s erroneous limiting instruction was harmless because it merely allowed the jury to ‘draw an inference that the evidence could not logically support.’ Id.
“Additionally, as the majority explains, R.C.W.’s intent, opportunity, and plan were not at issue at trial. R.C.W. was T.W.’s father, and they lived together at the time of the offenses. From this evidence, the jury must have drawn the conclusion that R.C.W., who was living with his daughter, had the opportunity to rape, sodomize, and sexually abuse her. Because R.C.W.’s opportunity to commit the charged offenses was clearly established at trial, the circuit court’s instruction that allowed the jury to consider R.C.W.’s collateral bad acts for the purpose of establishing opportunity was harmless. Cf. Dawson v. State, 675 So.2d 897, 900 (Ala.Crim.App.1995) (‘The erroneous admission of evidence that is merely cumulative is harmless.’ (citing Reese v. City of Dothan, 642 So.2d 511, 515 (Ala.Crim.App.1993))); Woods v. State, 13 So.3d 1, 23 (Ala.Crim.App.2007). Likewise, as the majority states, ‘[t]he intent necessary to these types of crimes may be inferred by the jury from the acts themselves.’ 168 So.3d at 95. Because R.C.W.’s general intent was established by the acts themselves, the circuit court’s instruction allowing the jury to consider additional evidence of intent was harmless. Cf. Dawson, 675 So.2d at 900; Woods, 13 So.3d at 23. Finally, as the majority states, R.C.W.’s identity was not at issue in this case because R.C.W. did not allege that someone else committed the crime, Because R.C.W. did not place his identity at issue, the jury had two choices: believe that R.C.W. committed the acts or believe that no acts occurred. Because R.C.W.’s identity was not at issue and the jury was left to decide only whether the acts occurred, allowing the jury to consider evidence to show a plan and thus R.C.W.’s identity was not harmful. Id.”
R.C.W., (Windom, P.J., dissenting).
Instructing the jury that it could consider the collateral-acts evidence for purposes for which it ultimately would not actually consider it did not prejudice R.C.W., because the trial court properly instructed the jury that it could consider the collateral-acts evidence for the proper purpose of motive. The instruction here, although overly broad, was not so broad that it essentially gave no guidance or no limitation to the jury as to the proper purpose for which the evidence could be considered. See Ex parte Billups, supra. Because the collateral-acts evidence was appropriately before the jury for the purpose of proving *119 motive, and because the limiting instruction did not rise to the level of prejudicial ambiguity found in Ex parte Billups, any error arising from the trial court’s limiting instruction was harmless.

Conclusion

This Court did not establish with its decision in Ex parte Billups a per se rule requiring the reversal of a conviction when the trial court gives an overly broad limiting instruction as to the purposes for which collateral-act evidence admitted pursuant to Rule 404(b) may be considered. In fact, this Court expressly limited the holding in that case to the “particular circumstances of [that] case.” Ex parte Billups, 86 So.3d at 1086. In this matter, we agree with the Court of Criminal Appeals that the evidence relating to R.C.W.’s pri- or sexual misconduct with his daughters was admissible to show motive. We further agree that the trial court’s limiting instruction was erroneous because it permitted the jury to consider the collateral-acts evidence for issues not in dispute. However, because of the distinctions shown above this case is unlike Billups, and we apply a harmless-error analysis and conclude that any error arising from the trial court’s limiting instruction was harmless and was not prejudicial to R.C.W. Accordingly, the judgment of the Court of Criminal Appeals is reversed, and the case is remanded for further proceedings.
REVERSED AND REMANDED.*
STUART, PARKER, MAIN, WISE, and BRYAN, JJ., concur.
MOORE, C.J., and SHAW, J., concur in the result.
MURDOCK, J., dissents.

 Note from the reporter of decisions: On November 14, 2014, on remand from the Alabama Supreme Court, the Court of Criminal Appeals affirmed, without opinion.